HAMITER, Justice.
 

 
 *799
 
 Plaintiff, Domenico Fazzio, is the operator of bowling alleys. Defendant, the Riverside Realty Company, Inc., is the owner and lessor of portions of a shopping center located on Franklin Avenue in the City of New Orleans. In the early part of 1949 T. A. Pittman, president of the defendant corporation, began negotiations with plaintiff with the view of constructing for and leasing to the latter a building in such center sititable for bowling and restaurant purposes. After numerous conferences (at which plaintiff was assisted by his sons Sam and John Fazzio) plans and specifications, prepared by the defendant’s architects, were agreed upon; and on August 29, 1949 a written lease contract was signed. Following completion- of the building in April, 1950 plaintiff installed his equipment therein (including eighteen bowling alleys), and he commenced operations under the name of “Sugar Bowl Lanes”.
 

 On July 23, 1954 this suit was instituted by the lessee against the lessor. Among other things the petition alleged:
 

 “That, in addition to the failure of the defendant to comply with the lease, its plans and specifications, as outlined above, the defendant has likewise failed to deliver the leased premises to the plaintiff in good condition and free from vices and defects in the original construction of the leased premises.
 

 “That the leased premises were not delivered in good condition and the leased premises are structually defective and contain vices in the original construction, to such an extent that said premises are becoming unusable and inadequate for the purposes for which the premises were leased, in the following particulars, among others, to-wit: water is entering the leased premises through the floors and walls of the building, causing the bowling alleys, installed by the plaintiff, to become damaged and rendering certain electrical equipment, used for bowling, inoperative.
 

 “That the entrance of water into the leased premises began in about April, 1951 and is due to the failure of the defendant to properly design and construct said building and likewise the defendant’s failure to adhere to the plans and specifications by omitting the exterior stucco on the outside walls.
 

 “That since April, 1951, the water penetration and dampness have increased; that the plaintiff was able to offset the water penetration somewhat in the beginning by using heaters, fans and pumps to dry the premises, but the constant water penetration and an increase in the water penetration have rendered any efforts by the plaintiff to keep the premises dry without avail.”
 

 Plaintiff demanded damages in the total amount of $25,747.50. He further prayed for judgment condemning the defendant
 
 *801
 
 corporation to correct the omissions, vices and defects complained of or, on its failure to so perform, authorizing him to make the corrections and to deduct the cost thereof from the rent.
 

 The defendant excepted to the petition as being vague and as stating no cause of action. On the overruling of the exceptions an answer was filed in which it denied that the building was structurally defective and it affirmatively averred that under the terms of the lease plaintiff was obligated at his expense to make all repairs necessary to prevent dampness in the premises.
 

 After a lengthy trial judgment was rendered, based on the verdict of a jury, reading in part as follows: “It is ordered, adjudged and decreed that there be judgment herein in favor of plaintiff, Domenico Fazzio and against the defendant, Riverside Realty Company, Inc., condemning defendant to do the following work on the premises bearing municipal No. 2909 Franklin Ave. identified as Sugar Bowl Lanes:
 

 “(1) Apply stucco to the exterior surface of the walls of said buildings, and
 

 “(2) Make said building free from vices and defects causing water to enter the leased premises through the floor and walls of the building.
 

 “And in lieu of the said defendant doing the aforesaid work promptly the plaintiff, Domenico Fazzio, shall have the right to do same, and deduct the cost thereof from the rents due defendant, Riverside Realty Company, Inc., under the terms of the lease existing between the parties.
 

 “It is further ordered, adjudged and decreed that there be judgment herein in favor of plaintiff, Domenico Fazzio, and against the defendant, Riverside Realty Company, Inc., for the sum of $15,000 together with legal interest thereon from judicial demand until paid and all costs of suit.”
 

 The defendant appealed from the judgment. Plaintiff has answered the appeal asking for an increase in the damages awarded.
 

 Defendant’s first complaint here is, to quote from the brief of its counsel, that “The action of the Court in overruling the exception of vagueness prior to trial and of overruling the objection of defendant to broadening the pleadings during the course of the trial, were reversible error.” We find no error in the rulings. The above quoted allegations of the petition were definite enough for properly pleading thereto; they stated a cause of action; and they were sufficiently broad to permit plaintiff’s introduction of evidence to prove that the leased premises were structurally defective, as well as to show the nature and cause of the alleged vices, particularly since the defendant had constructed the building, using plans and specifications prepared by its own architects.
 

 
 *803
 
 Considering now the question of defendant’s liability, Revised Civil Code Article 2695 (invoked by plaintiff as the basis for his damage claim) provides: “The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the fessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.” In our opinion these provisions are clearly appropriate to the facts of the instant cause and, hence, plaintiff is entitled to recover whatever damages he has sustained.
 

 The record discloses that the portion of the building on which the bowling alleys rest was constructed and is known as a floating slab. Its top or surface is located about two and one-half feet below ground level. Between edges of the slab and three chain walls there is a space in which was placed a material or product (known as Flexcell) to form a mastic or expansion joint. The purpose of this joint is to permit the slab to expand without causing damage to the abutting walls. Above the ground level are concrete block walls, the exterior of which were not coated with waterproof cement stucco as required by the plans and specifications.
 

 In April, 1951, following a heavy rain, plaintiff discovered that water had entered the building and was standing about three inches deep in the rear thereof, particularly in the pit where the pin boys stand. With the aid of pumps plaintiff removed it. Pittman, defendant’s president, was notified of the occurrence, but he did nothing to determine the cause or to remedy the condition. Also, plaintiff caused the digging of some ditches on the outside of the building so as to drain off the water standing there.
 

 No further indication of trouble was noticed until in 1953 when the alleys were undergoing a routine refinishing by employees of the Brunswick-Balke-Collender Company, one of the few organizations in this country that specialize in servicing bowling installations. The employees then informed plaintiff that moisture was entering the building in the area of the alleys, and he in turn complained in vain to Pittman.
 

 Thereafter much warping of the bowling equipment occurred, and on July 13, 1954 the secretary of the New Orleans Bowling Association notified plaintiff by letter that the alleys
 
 would not
 
 pass the requirements of the American Bowling Congress unless certain manifest imperfections were corrected. The official instructed: “Under these conditions, it is going to be necessary to resurface your alleys and have your approaches adjusted.”
 

 
 *805
 
 In the performance of the required extraordinary resurfacing undertaking, which included the removal of certain parts of the alleys, it was found that considerable quantities of water had been entering the building from two sources and that large portions of the sub-flooring (it rested on the floating slab) had rotted because of an almost constant condition of wetness. Most of the water had come through the underground mastic or expansion joint between the slab and chain walls (or where it should have been, for in some places no mastic compound was present); the remainder had seeped through the above ground concrete walls which were not waterproofed.
 

 In contending that the defendant is not liable for the resulting damages its counsel argue in part: “The evidence is that eighty-five (85%) per cent of the water is coming through the mastic joint between the chain wall foundation and the floating slab. The evidence is also clear that Sam Fazzio requested the floating slab. It. is also clear from this record that Fazzio wanted this slab in its depressed location. This was to enable the patrons to enter upon a level for the bowling alley without going up a large number of stairs or without having to build this alley above the floor level. * * * ”
 

 According to the record, as we appreciate it, no request was ever made by plaintiff' dr' his sons (none of whom is ■ an architect or engineer familiar with construction problems) for a floating slab located below ground level. In fact, the other alleys operated by plaintiff are not below grade and some are on second and third floors. Plaintiff wanted and requested only that the alleys’ level be lower than the ordinarily used floor so that “the people walking in could look down and see * * And the manner of obtaining that result was left entirely to the discretion of defendant’s architects who alone decided on the below grade, floating slab construction.
 

 Also, we cannot agree with the further argument that the damage to- plaintiff’s property was caused solely by an extremely heavy and unforeseeable rainfall in 1951 which resulted in a hydrostatic head (tantamount, defendant asserts, to an act of God or an unnatural phenomena for which no liability attaches) that forced the water through the mastic joint a distance of two feet ten inches. The evidence discloses that at various times during other rainfalls water was observed entering the building through the-mastic joint (or where it'should have’been) and also through the concrete walls. Too, experts offered by plaintiff, whose testimony was not successfully refuted, stated that water in excess at the level of the mastic joint was a common occurrence in the City of New Orleans; and that, from a water-"
 
 *807
 
 proofing standpoint, the type of joint construction used by defendant was not designed or appropriate for below ground application. One of them referred to its use as being “very unfortunate”.
 

 Likewise unimpressive is the defense argument that a vermiculite or brunscalite product which plaintiff placed between the alleys and the slab for insulation purposes contributed largely to the rotting of the sub-flooring in that it absorbed and retained the incoming moisture. According to the record the mentioned material is customarily employed in installing bowling alleys, and plaintiff had the right to assume that the building would be waterproof and fit for the use for which it was constructed and leased.
 

 The further contention that the written lease obligated plaintiff to remedy the defective condition at his expense is also without merit. The provision relied on recites: “As a further consideration of this lease, Lessee agrees and binds himself: (a) To maintain the property in good condition; to make at his own expense all repairs of any kind, whether ordinary or extraordinary, it being understood, however, that any structural alterations shall be subject to approval of the Lessor.” A mere reading of this provision convinces us that the repairs contemplated to be made by the lessee related to imperfections arising after the commencement of the lease, not to inherent structural vices. Besides, in previous decisions we have held that similar clauses are not so broad as to encompass structural defects. Pierce v. Hedden, 105 La. 294, 29 So. 734; Bennett v. Southern Scrap Material Company, 121 La. 204, 46 So. 211; and Knapp v. Guerin, 144 La. 754, 81 So. 302.
 

 Again, on the question of liability, it is said that plaintiff cannot recover herein because he has failed to minimize damages. We are satisfied that he has done everything that he could do (short of undertaking to make the needed structural changes) to protect his equipment from deterioration. To this end, in addition to performing the aforementioned protective acts, he employed a waterproofing expert at an expense of $390 in an attempt to seal off the water.
 

 For the damages sustained plaintiff was awarded, as aforementioned, $15,000. Defendant com plains here: “The amount of damages determined by the jury was arbitrary and capricious- and without any relationship whatsoever to the proof in this record.” Plaintiff, through an answer to the appeal, maintains that the damages should be increased.
 

 Certainly the award was not arbitrary; it is amply justified by the evidence. The record conclusively discloses that a suitable restoration of the alleys would require an expenditure of $20,350 which, when accomplished, would render them the same as a new installation.
 
 *809
 
 However, at the time of the institution of this suit plaintiff had enjoyed their use for some four years and three months, and this should be taken into consideration in determining his damages. By employing a use expectancy period for the alleys of fifteen years (which the evidence shows is proper), and by making allowance for their operation during the mentioned four years and three months, plaintiff would be entitled to receive approximately $14,600 of the stated restoration cost. Adding to this the $390 that he spent in attempting to seal off the water (obviously other funds were expended also to provide protection) there results a total of about $14,990—or only a few dollars less than the quantum arrived at by the jury.
 

 Nor do we find that plaintiff should be granted in this cause the additional amounts which, in his answer to the appeal, he demands: $5,606.08 for business losses and overhead cost during a period of thirty days in which he might be required to close for making the repairs, and $5,400 for an anticipated “accelerated depreciation” of the bowling alleys. At this time the claims are purely speculative.
 

 There is merit, we think, in the objection of defendant to that part of the judgment condemning it to specifically perform its obligation to correct the structural defects in the building and, in lieu of its doing so, authorizing plaintiff to make the corrections and deduct the cost thereof from the rent. Under the title “Of Lease” in the Revised Civil Code we find no provision permitting a lessee to resort to a specific performance action in obtaining fulfillment of a lessor’s obligations. And in none of the cases relied on by plaintiff’s counsel did the court order performance under circumstances such as are present here.
 

 True, Revised Civil Code Article 1927, found under the title “Of Conventional Obligations” and heavily relied on by plaintiff’s counsel, recites: “In ordinary cases, the breach of such a contract [to do or not to do] entitles the party aggrieved only to damages, but where this would be an inadequate compensation, and the party has the power of performing the contract, he may be constrained to a specific performance by means prescribed in the laws which regulate the practice of the courts.” But assuming that a lease contract is of a type contemplated by that article we do not believe that its provisions are authority for ordering specific performance in the instant cause, for this plaintiff can be adequately compensated in damages. (Brackets ours).
 

 Accordingly, we must reject plaintiff’s demand for specific performance. His request for judicial authorization to correct the structural defects at the expense of defendant on the failure of the latter to so perform is necessarily refused also. That request is merely incidental to and
 
 *811
 
 for the enforcement of the specific performance demand. Besides, our presently passing on the question presented by it would amount only to the giving of an advisory opinion which, of course, we cannot do. However, whatever rights plaintiff has or may have with respect thereto, as well as to recover additional damages, will be and are fully reserved to him.
 

 For the reasons assigned the judgment appealed from is reversed and set aside, and the suit is dismissed with the above announced reservations, insofar as plaintiff’s demand for specific performance is concerned. In all other respects the judgment is affirmed at defendant’s costs.