375 So.2d 700 (1979)
HMC MANAGEMENT CORPORATION, the Louisiana Stadium and Exposition District and the State of Louisiana
v.
The NEW ORLEANS BASKETBALL CLUB (the Jazz) et al.
No. 10858.
Court of Appeal of Louisiana, Fourth Circuit.
August 29, 1979.
Rehearing Denied October 18, 1979.
*702 William J. Guste, Jr., Atty. Gen., Robert E. Redmann, Asst. Atty. Gen., George B. Recile, Staff Atty., La. Dept. of Justice, New Orleans, for La. Stadium and Exposition Dist. and State of La., plaintiffs-appellants.
Donald A. Hoffman, City Atty., New Orleans, for City of New Orleans and Ernest N. Morial, Mayor, intervenors-appellees.
Adams & Reese, Michael G. Crow, New Orleans, for Sheldon D. Beychok and Mary Olive Pierson, defendants-appellees.
Theodore W. Nass, New Orleans, for Paul Griffin, Aaron James, Rick Kelly, Pete Maravich, Gail Goodrich, Tommy Green, James Hardy & James McElroy, defendants-appellees.
Tucker & Schonekas, Gibson Tucker, Jr., New Orleans, for HMC Management Corp., plaintiff-appellant.
Stone, Pigman, Walther, Wittmann & Hutchinson, David L. Stone, Wayne J. Lee, New Orleans, for Nat. Basketball Ass'n and certain of its member clubs, defendants-appellees; Proskauer, Rose, Goetz & Mendelsohn, New York City, of counsel.
Michael A. Cardozo, Jeffrey A. Mishkin, Mathew E. Hoffman, New York City, Shushan, Meyer, Jackson, McPherson & Herzog, Donald A. Meyer, Dorothy T. Blackwood and Kenneth W. Kirchem, New Orleans, for New Orleans Basketball Club (The Jazz) and properly served general partners other than Sheldon D. Beychok, defendants-appellees.
Before BOUTALL, SCHOTT and BEER, JJ.
BOUTALL, Judge.
This is a suit involving the validity of a lease agreement for playing professional basketball games in the Superdome, violations of the lease, and available remedies. A concurrent claim is violation of the antitrust laws of Louisiana, R.S. 51, Part IV. This appeal seeks review of the trial court's judgment maintaining a number of exceptions filed by defendants and refusing to issue a preliminary injunction.
The plaintiffs are:

*703 HMC Management Corporation (HMC), a Louisiana business corporation operating the Louisiana Superdome Facility pursuant to a management contract with the State of Louisiana, pursuant to Act 64 of 1977; the Louisiana Stadium and Exposition District, (LSED) a body politic of the State of Louisiana, created by constitutional mandate, Sec. 47 of Art. 14 of the constitution of 1921; and modified by Act 651 of 1974, Act 541 of 1976; and now the "Representative of the State and the Governor in all matters incidental to the performance of the management contract approved by Act No. 64 of the 1977 regular session. . . .", Act 499 of 1978; the State of Louisiana; and the Attorney General of the State of Louisiana, who appears pursuant to the provisions of LSA R.S. 51:128 and 51:138 to enforce the provisions of Part IV of Title 51 of the Louisiana revised statutes.
The intervenor is the City of New Orleans, a political subdivision of the State of Louisiana, and its Mayor, who join with the plaintiffs and make claims on their own behalf.
The defendants are the New Orleans Basketball Club, (JAZZ) a Louisiana partnership, and its individual partners, who own the Jazz professional basketball team; the National Basketball Association, a joint venture, and its twenty-two member clubs (which includes the Jazz); and the individual team members of the Jazz.
The plaintiffs bring their suit on two major premises:
(1) In contract, alleging they are parties to a contract of lease with the Jazz providing the Superdome for the Jazz home games. They plead a lease of September, 1975 between LSED and Jazz, allege violations of that lease by Jazz in moving the team to Utah and thus refusing to play the home games in the Superdome; seek specific performance under the terms of the lease requiring the Jazz to play in the Superdome; and seek injunctive relief and damages.
(2) Under Louisiana's antitrust laws, Part IV, Title 51, La. Revised Statutes, alleging violations by monopolizing the professional basketball business in Louisiana and by the movement of Jazz from New Orleans to Salt Lake City as a result of the antitrust activities of all of the defendants, causing violation by Jazz of its lease; seeking treble damages and injunctive relief. Louisiana's Attorney General joined this portion of the suit under authority of R.S. 51:138.
After some preliminary attempts, the State and LSED obtained a temporary restraining order restraining the Jazz and its individual partners from activities that would be in furtherance of moving the basket ball club from the City of New Orleans. The City of New Orleans intervened in the suit contending that it was a third party beneficiary under the contract of lease, also alleging an implied agreement with Jazz to perform in New Orleans, and pleaded the Anti Trust violations. Meanwhile, the various defendants were filing a number of exceptions against the original plaintiffs and also filed exceptions against the City of New Orleans. The trial court set a hearing on the various exceptions filed and also set for trial a rule nisi for a preliminary injunction sought by plaintiffs and intervenor. After an evidentiary hearing and arguments, the court rendered judgment along with very extensive and well reasoned Reasons for Judgment, and it is from that judgment that the appeal is taken by plaintiffs. The decree states:
"IT IS ORDERED, ADJUDGED AND DECREED that the exceptions filed by the New Orleans Basketball Club and the general partners against the City of New Orleans be maintained, dismissing the petition of intervention of the City of New Orleans and its Mayor, Ernest N. Morial.
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the exceptions of the New Orleans Basketball Club and its general partners against the State of Louisiana and the Louisiana Stadium and Exposition District are hereby maintained, dismissing their petition.

*704 "IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the exceptions of the National Basketball Association to the petition of intervention of the City of New Orleans and its Mayor, Ernest N. Morial and to HMC Management Corporation and the Louisiana Stadium and Exposition District and the State of Louisiana are hereby maintained, dismissing the National Basketball Association as a party to this lawsuit.
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the exceptions of Sheldon D. Beychok and Mary Olive Pierson, filed against the State of Louisiana, the Louisiana Stadium and Exposition District, the City of New Orleans and Ernest N. Morial, its Mayor, are hereby maintained, dismissing those petitions.
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all exceptions directed against HMC Management Corporation are overruled, and said exceptions are dismissed without prejudice.
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the request for a preliminary injunction against the New Orleans Basketball Club is hereby denied and the temporary restraining order previously issued herein is annulled, set aside and recalled."
In considering the validity of this judgment, we emphasize that there has been no hearing on the merits of the case, only on the preliminary matters stated therein. None of the defendants have appealed or answered the appeal, and the issues are only those raised by plaintiffs and intervenor.
Most of the exceptions filed are peremptory exceptions of no cause of action and of no right of action directed against the plaintiffs and intervenor by the various defendants, and the basic resolution of these exceptions depends upon the contractual rights of the parties in the lease of the premises. None of the defendants contest the right of HMC to bring an action for breach of the lease, but several do contest the right of State of Louisiana and LSED to bring suit for breach of the lease. Complicating this issue is the question of whether the original lease of September 15, 1975 between LSED and Jazz has been superseded by a later lease. The only lease alleged by plaintiffs is the original one of 1975, and of course in the consideration of an exception of no cause of action the well pleaded allegations of that petition would control. However in the plea of no right of action, it is permissible to introduce evidence in support of the exception. The exception of no right of action is designed to question the right or interest of the plaintiff and institution of the suit. C.C.P. Article 927; Gaudet v. Board of Commissioners, 339 So.2d 931 (La.App. 4th Cir. 1976). The trial judge dismissed the petition of the State and LSED on exception of no right of action, apparently believing that the second contract was the only legal contract between the parties and that HMC alone had the right to enforce that contract. We disagree with his ruling.
The original lease of 1975 was entered into between LSED and the Jazz, providing for use of the Superdome over a period of 10 years for Jazz home games. At that time LSED had the authority to manage the Superdome and it was not until the enactment of Act # 64 of 1977 that HMC Management Corporation was authorized to become the State's representative for management of the Superdome facilities. The agreement between HMC and the State, thus embodied in the statutory law, did not provide that HMC would have the exclusive authority to operate the Superdome or that HMC was solely responsible for all of the Superdome contracts. Instead it provided precisely the opposite for this contract. We refer to Article 8.1 relating to existing contracts[1] which provides that the State continues *705 to remain responsible under this lease. Solely for the purpose of this exception, we point out that the State's interest in the original lease could not have legally been changed by any action of HMC in its attempts to negotiate a new lease or revise the existing lease. Article 17 of the Statutory agreement provides that HMC is an independent contractor and Article 19 provides that the State must give written approval to any contract undertaken by HMC during the time of this agreement, when the performance period is in excess of five years. We point out that the 1975 lease is for a period in excess of five years and that the alleged superceding lease of 1977 is also for a period in excess of five years. The State has not given its approval, and under Act 499 of 1978, the authority to grant such approval on behalf of the State is LSED.
Accordingly, it would appear that the State and its agency, LSED, do have a real and actual interest in the action brought. The extent of that interest and the relief afforded may very well vary considerably dependent upon which contract is determined to be applicable to all of the parties after a hearing on the merits of the case. However, whatever the ultimate result may be, these parties cannot be prevented from asserting their interests through use of the exception of no right of action.
The lease in question was signed by the New Orleans Basketball Club (JAZZ) and accordingly the exception of no right of action filed by it concerning the contract matters should be overruled. The main thrust of its argument on this point directs itself to the merits, i. e., the ultimate relief that may be achieved by the parties, and while that is a consideration that may be quite important to a resolution of the issuance of preliminary injunction, it falls beyond the scope of inquiry on the exception of no right of action.
Jazz partners Sheldon D. Beychok and Mary Olive Pierson, partners in the Jazz, have also filed exception of no right of action against the State and LSED, but that exception appears to be based upon the exception filed by the National Basketball Association and relates only to the anti-trust violations. In their answer however they do contest the rights of the parties under the leases, and the trial court dismissed them from the suit insofar as the State and LSED are concerned. We are not shown any difference in position of these partners as opposed to the other Jazz partners, and under these circumstances, we believe that their exception should be overruled to the same extent as that of the Jazz partners.
Concerning this contract issue, the National Basketball Association has urged exceptions relating to service of process, lack of jurisdiction over the subject matter, no right of action, and no cause of action. We note that they were not parties to any lease agreement, and to that extent are not affected thereby. Accordingly, their exceptions are more fully discussed under the anti-trust portion of this judgment.
We next consider the effect of the exceptions filed by the various defendants against the plaintiffs under the anti-trust portion of the suit.
In bringing suit, plaintiffs, HMC, LSED and the State of Louisiana, allege as a concurrent cause of action that the various defendants are presently conspiring to violate the anti-trust laws of the State of Louisiana as follows: That the National Basketball Association has created a monopoly on nationwide professional basketball, that it uses this monopoly to restrict the service of their players, restrict the granting of additional franchises to play in the League, restrict competitive basketball games with anyone other than another *706 member of the association, to fix the prices charged patrons for its games, to fix prices charged for obtaining a franchise to play in the League, to restrict the times and places at which games are played, control the services of the players, both present and future, limiting their employment and to use boycott to enforce their demands. They further allege that the activities of this illegal monopoly have caused the Jazz to move from the Louisiana Superdome in violation of the provisions of the lease contract between plaintiffs and the Jazz causing loss of rent and profits and preventing the plaintiffs from contracting with another national professional basketball team to play at the Superdome. As a result of these violations, the plaintiffs allege they are entitled to treble damages under R.S. 51:137, and seek injunctive relief under R.S. 51:128 and 129. It should be noted at this time that the State of Louisiana appears in two capacities, 1.) through its Attorney General to prevent and restrain violations of the anti-trust law and 2.) as the owner of the Superdome and an interested party in the lease.
To these claims the defendants have filed exceptions of no cause of action, no right of action, and lack of jurisdiction over the subject matter. Although there is some divergence in approach of the various defendants, all of the exceptions are based on the proposition that the business of the Jazz and of the NBA is interstate commerce and is governed by the application of United States anti-trust laws exclusively, and that the anti-trust laws of the State of Louisiana are inapplicable, the field of interstate basketball having been preempted by federal laws. It is contended to us that the decision of the United States Supreme Court in the case of Flood v. Kuhn, 407 U.S. 258, 92 S.Ct. 2099, 32 L.Ed.2d 728 (1972), affirming the United States Court of Appeals for the Second Circuit, 443 F.2d 264 (2d Cir. 1971) is controlling of this proposition. We do not conclude that that case is decisive of all of the issues in this case.
As a general proposition the Flood case held that the business of baseball was not subject to State anti-trust laws because "the burden on interstate commerce outweighs the states' interest in regulating baseball's reserve system [and thus] the Commerce Clause precludes the application here of State anti-trust law." 443 F.2d at 268. First, we note that the business of interstate baseball seems to be governed by different anti-trust regulations than those of other sports. This is conceded in the majority opinion of the court as well as in the dissenting and concurring opinions. Nevertheless, it appears that as to other sports, the courts have held that the interstate commerce regulations do apply. For basketball see Haywood v. National Basketball Assn., 401 U.S. 1204, 91 S.Ct. 672, 28 L.Ed.2d 206 (Douglas J. in chambers).
We have no difficulty in stating that under the allegations of plaintiff's petition the defendants are engaged in interstate commerce. Allegations are made as to the vast amount of money involved in this business with its impact upon radio, television and other media and point out that the membership of the National Basketball Assn. is composed of teams from different states who play each other in a nationwide circuit. We do not believe that it admits of doubt or argument that Jazz and NBA are engaged in interstate commerce. Being of that view, we would conclude that most of the violations that are alleged cannot be subject to the Louisiana Anti-Trust Laws. Indeed the State finds itself in a rather peculiar position where under the types of relief sought it would prohibit Jazz and NBA from conducting its business with players, scheduling of events, etc. as being violations of the law, yet insist that the games be played in Louisiana. We also recognize the chaos that would result should this court seek to enforce by specific performance or injunctive relief the requirement that the Jazz play its games in the Superdome, inasmuch as such an order must consistently require that some other member team be made to appear and play that game. Clearly the vast majority of the anti-trust allegations have interstate commerce application and lie within the field of federal regulation. Yet, at the same time we conclude that there is an area *707 of state interest which is covered by the Louisiana law and not pre-empted by federal law.
We refer to the contract of lease between the parties and the alleged violations of that lease. The determination of which lease is valid between the parties and whether its terms have been violated is a state question. None of the parties seriously contend that it is not. It should then follow that if the violation of that lease has occurred as a result of a violation of the state anti-trust law, the issue would remain a state matter unless it is shown that federal law is applicable and pre-empts that issue.
To put it in terms of this suit, plaintiffs have alleged a violation of the lease contract. Presuming that plaintiffs are able to establish proof of violation of the contract provisions, then plaintiffs would be entitled to damages for that violation (without considering at this time the availability of other types of relief.) Whatever the amount of damages that may pertain under the contractual obligations, if the proven violation was also proven to be the result of a conspiracy or overt action of the defendants within the prohibition of the state anti-trust law, treble damages may be awarded instead of the contractual damage. R.S. 51-137.
This matter is on appeal on exceptions of no cause of action and no right of action and we call attention that there has been no evidentiary hearing of the issues of what the violations may be, the damages that may result, and the effect of these two questions on interstate commerce. Under the pleadings as they now stand, HMC, the State of Louisiana, and LSED all are interested parties in the contract by virtue of the ownership and operation of the leased premises and the contract covering them. Their right of action to enforce the contract provisions give them a right to seek the additional remedy of treble damages under R.S. 51:137.
But defendants have also pleaded exceptions of no cause of action and we must refer to the allegations of plaintiffs' petition to determine if they have alleged sufficient facts of conspiracy or overt action to establish a cause of action based on anti-trust violations.
We note Article 19 of the petition alleges that all of the defendants "are presently conspiring to violate the anti-trust laws of the State of Louisiana in this:". There follows a number of allegations detailing the operation and organization of the basketball industry by defendants. Those relevant to the contract here involved are Article 20that the defendants are engaged in the business of exhibiting games, Article 22scheduling of home court games, Article 28that games are scheduled only with other franchisees, Article 30games are played on home courts, Article 31(c)that defendants limit and artificially restrict times and places of games. The petition alleges in Article 34 that plaintiffs are damaged by the monopoly and "that the Jazz, but for the monopoly in which it participates as aforesaid would never have defaulted on its contract, thus depriving the plaintiffs of lost profits in said amounts."
These allegations are simply conclusions and do not state the necessary facts upon which a cause of action should rest under Louisiana procedural law. Accordingly we agree with the decision of the trial court in maintaining the exception of no cause of action filed by defendants not parties to the contract. To establish that cause of action, the plaintiffs must allege with some specificity the acts of these parties showing a conspiracy or a concert of action that caused Jazz to take the action it did in violation of its lease obligation.
Because it is possible that some allegations of specific activity could be made to state a cause of action, we conclude that the trial judge should not have dismissed the defendants from suit but should have permitted plaintiffs an opportunity to amend the petition under C.C.P. Art. 934. We amend the judgment to permit amendment and remand this issue to the trial court to fix the delay for amendment in accordance with C.C.P. Art. 934.
*708 The peremptory exceptions filed against the City of New Orleans and its Mayor present different legal issues because neither is a party to the contract of lease which is the basis of plaintiff's suit. We agree with the dismissal of the intervention and adopt the following reasons of the trial judge:
"The City now contends that it has a right to enter this lawsuit, although not a party to the contract, on three legal theories.
"The first theory is that the City is a third party beneficiary of a `stipulation pour autrui' as set forth in Art. 1890 of the Louisiana Civil Code.
"In their petition, the City claims that it supported and directly assisted in the location of an NBA franchise in New Orleans, that the owners adopted the name `New Orleans Jazz', which linked the team to the unique musical heritage of the city, and that the city supported the Jazz in their promotional advertising, encouraging tourists to come to New Orleans and attend Jazz games; that NBA attendance records were set at some games, and therefore, the reputation, prestige and good name of the city, as well as tourist revenues will be damaged if the Jazz relocate to Utah.
"The legal source and definition of `stipulation pour autrui', found in LSA-CC Art. 1890, which defines this proposition:
`A person may also, in his own name, make some advantage for a third person, the condition or consideration of a commutative contract, or onerous donation; and such third party consents to avail himself of the advantage stipulated in his favor, the contract cannot be revoked.'
* * * * * *
"The fundamental requirement of a stipulation pour autrui is that the third party relationship forms the consideration for a condition of the contract; the benefit derived from the contract by the third party may not merely be incidental to the contract or lease agreement in question. Shreveport vs. Gulf Oil Corporation, 431 Fed.Supp. 1 (1975). In Hertz-Equipment Rental Corporation vs. Houma [Homer] Knost Construction Company, Inc., 273 So.2d 685 ([La.App.] 1973), the Court stated:
`The jurisprudence requires that such a provision for the benefit of third persons be in writing and clearly manifest an intention to confer a benefit upon a third party.'
"Louisiana courts recognize the right of a third party beneficiary to sue on a contract only if the contract manifests an intention to confer a benefit on a third party. United States vs Automobile Club Company, 522 Fed.2d 1 (5th CC 1975).
* * * * * *
"The lease agreement does not clearly manifest any intention to confer a benefit on the City as it was simply an agreement between two entities for their mutual benefit.
* * * * * *
"* * * * There is no claim contained in the petition for intervention, nor is there any reason to suggest that securing an advantage for the City would beneficially affect the State or LSED in the negotiated lease, in a material way. The State and LSED, in executing the lease, merely demonstrated the proper proprietary interest of increasing the use of its facilities, the Dome, thereby promoting its own related interests. The incidental effect of the agreement upon the City are not such as to create in them an actionable right.
"Accordingly, the City does not meet the criteria under our law to establish them as a third party beneficiary and this theory of law is inapplicable in this case.
"Alternatively, and as a second theory, the City contends that the Jazz impliedly contracted with the City to remain in New Orleans for as long as the franchise continues to exist and as long as the Club plays professional basketball in the NBA. They claim that the Jazz `impliedly' agreed to do nothing to damage the name, prestige and reputation of the City, and further, the Club had an `implied' obligation to promote the prestige, reputation and good name of the City, and generate income for the City.
*709 They assert this implied obligation will be breached if the Jazz moves to Utah and they will sustain damages as a result of the move.
"The authorities for implied contracts are found in the Louisiana Civil Code, Art. 1811, which reads as follows:
`The proposition as well as the assent to a contract may be expressed or implied: expressed when evidenced by words either written or spoken;
`Implied when it is manifested by action, even by silence or by inaction, in cases in which they can from circumstances be supposed to mean or by legal presumption or directed to be considered as evidence of an assent.'
"The definition of an implied contract in our law has been defined as follows:
`An implied in fact contract is one which rests upon consent implied from the facts, and circumstances showing a mutual intention to contract.' V-A [8] Taxicab Service, Inc. vs Hayes, 322 So.2d 442 (4th Cir. [La.App.] 1975).
"The significant words in this definition, are `a mutual intention to contract.' There is nothing in the City's petition and supplemental petition to indicate there was a mutual intention to contract between the parties.

* * * * * *
"* * * * * "Therefore, the City's theory of implied contract, as a matter of law, must be dismissed.
"Although the City did not plead the doctrine of quasi-contract, it is inherent within the doctrine of implied contract and simply stated, it is as follows:
`A quasi-contract is a contract implied in law without manifestation of consent and is forced upon the parties by law.' V-A [8] Taxicab Service, vs Hayes (Supra).
"The most recent expression of quasi-contract is found in the 4th Circuit opinion of Capitano vs Huber, Hunt & Nichol(1)s, Inc., 359 So.2d 308 (4th Cir. [La. App.] 1978), which ironically involved a claim by a dirt excavator, without the benefit of a written contract, at the Dome, against the general contractor. The Court set forth the five necessary pre-requisites for recovery in actio de in rem verso.
`1. An enrichment.
2. An impoverishment.
3. A connection between enrichment and the impoverishment.
4. An absence of "justification" or "cause" for the enrichment or impoverishment, and
5. The plaintiff's lack of any remedy at law, that is subsidiary or corrective in nature.'
"Recovery is based on the principle that one who is unjustly enriched at the expense of another, must make restitution of the amount of the enrichment or, in some cases, the amount of impoverishment.
"In discussing these requirements, there must first be an enrichment. In this case, the pleadings do not allege any enrichment to the Jazz, and to presume that they will increase their revenues and profits due to their move to Utah is nothing more than pure conjecture.
"There must be an impoverishment. The economic losses to the City, as claimed in their pleadings, are equally as speculative. The collection of amusement taxes is an only incidental function of city government, and not justification to enforce the doctrine of quasi-contract. The City collects taxes in various forms, the powers granted to it from its citizenry, which gives them no greater interest in the Jazz commercial operation than it does in any other commercial venture within its boundaries. Regarding the question of loss of tourist revenues, because of the departure of the Jazz, it would grant legal authority to the City to file suit against any tourist-based industry for relocation. In today's uncertain times, the right of free enterprise and freedom of the marketplace, and the freedom and mobility of interstate commerce outweigh the City's speculative quasi-contract rights to those types of businesses.
"Thirdly, there must be a connection between the enrichment and the resulting impoverishment. *710 The Supreme Court of Louisiana set forth the criteria for this specific requirement as follows:
`It must be clear that the defendant would not have been enriched unless the plaintiff had been impoverished.' Edmonston vs A-2nd Mortgage Company of Slidell, Inc., 289 So.2d 116 (Sup.Ct. [La.] 1974).
* * * * * *
"There must be an absence of justification of cause for the enrichment or the impoverishment. Again, the Louisiana Supreme Court in the Edmonston case, supra, has clearly interpreted the word `cause' to mean as follows:
`Cause' is not in this instance defined as meaning commonly associated with contracts, but rather it means that the enrichment is justified if it is a result of, or finds its explanation in, the terms of a valid juridical act between the impoverishee and the enrichee, or between a third party and the enrichee. A valid juridical act with the enrichee is essential to a finding of `cause'.
"The Court has already concluded that there was not any valid juridical act (contract) existing between the Jazz and the City which would fulfill this requirement.
"Accordingly, the City's claim for quasi-contract is without merit.
"Finally, the City claims that it enjoys a good reputation throughout the United States as a professional sports center and enjoys enthusiastic fan support. The action of the Jazz in moving from New Orleans causes damage and ridicule to the sporting reputation of the City, which constitute a libelous and slanderous injury to the City.
"In this theory of law, it is important to recognize the distinction between words and conduct. The City's petition does not state that any words, utterances or statements alleged to have been made by the Jazz or its agents. The petition rests its cause of action upon the `action or conduct of the Jazz,' in physically moving to Utah. Therefore, can the City, a public entity, be defamed by conduct?
"In Perril[l]oux vs Batiste, 357 So.2d 841 (4th Cir. [La.App.] 1978) the court set forth the essential elements of defamation to start a cause of action as:
1. Defamatory words.
2. Publication.
3. Falsity.
4. Malice, actual or implied.
5. Injury.
"Therefore, the City's petition is defective in regard to the requirement of defamatory words and malice, actual or implied.
"Furthermore, through unbroken legal precedent in our state, government has been denied the right to bring an action on its own behalf or on behalf of its citizens for libel and defamation. Only citizens of the state may state for their individual rights in this area of law.
"The theory being that the `State' is an extension of its populace, and does not exist separate and apart from its citizens. The purpose of the state is to maintain order, freedom and provide public services to its citizens. The state is not distinct or separate from its people. This fundamental philosophy of the state's role in our society is the bedrock of democracy.
"The leading case in this area of law is State of Louisiana vs Time, Inc., 249 So.2d 328, (1st Cir. [La.App.] 1971) which maintained the defendant's exception of no cause of action and no right of action because the state did not have a cause of action for defamation, even if the charges in the article were false and malicious. The state could not bring an action on behalf of its citizens for defamation.
"Therefore, the City has no right or cause of action to sue for libel or slander, and the exceptions filed by the defendants herein are maintained and the City's petition of intervention and supplemental petition are dismissed herein."
We now pass to a review of the trial court's refusal to grant preliminary injunction.
*711 The issues raised make the following rules applicable to the preliminary injunction sought: R.S. 51:128 permits injunction pending proceedings to issue at request of the State "if it is just in the premises"; § 129 requires private parties to make "a showing that the danger of irreparable loss or damage is immediate"; and C.C.P. Art. 3601 requires for that portion of the suit not covered by the anti-trust laws a showing that "irreparable injury, loss, or damage may otherwise result to the applicant".
The evidence submitted would indicate that by the time plaintiffs had filed their petition and received a temporary restraining order, the Jazz had effectively moved its business from New Orleans and was starting up its business in Utah. The issuance of preliminary injunction as a conservatory writ to maintain the status quo would thus be of no avail to petitioners.
We have determined that the only rights available to the plaintiffs are those arising out of the lease contract based upon the violations alleged. The trial judge found specific performance of the lease was not available to plaintiffs because (1) the contract containing that remedy had been superceded and (2) as a legal proposition, the Courts do not issue injunctive relief for specific performance to enforce contracts of lease, referring to Daily State Publishing Co. v. Uhalt, 169 La. 893, 126 So. 228 (1930) and Fazzio v. Riverside Realty Co., 232 La. 794, 95 So.2d 315 (1957). Accordingly it found plaintiff rights to be damages which could be adequately compensated.
Although we do not agree completely with the trial judge's conclusions, we agree with his resulting judgment because this matter is on rule for preliminary injunction and not on the merits. For the purpose it is sufficient to deny preliminary injunction where it is unlikely that plaintiff may obtain the relief sought on the merits. We note that to require the Jazz to play in the Superdome also requires us to order the NBA member teams to schedule and play those games. At this stage of the proceedings, and considering the preparations necessarily involved in such scheduling, we cannot conclude that plaintiffs' injuries will preponderantly outweigh the possible injuries to defendants.
Accordingly, we would affirm the dismissal of the rule nisi for preliminary injunction.

DECREE
We decree the following:
1. The judgment maintaining the exceptions of the New Orleans Basketball Club and the general partners against the City of New Orleans, dismissing the petition of intervention of the City of New Orleans and its Mayor, Ernest N. Morial is affirmed;
2. The judgment maintaining the exceptions of the New Orleans Basketball Club and its general partners against the State of Louisiana and the Louisiana Stadium and Exposition District is reversed and the exceptions are overruled;
3. The judgment maintaining the exceptions of the National Basketball Association to the petition of intervention of the City of New Orleans and its Mayor, Ernest N. Morial is affirmed, dismissing the intervention against it;
4. The judgment maintaining the exceptions of the National Basketball Association against HMC Management Corporation, the Louisiana Stadium and Exposition District, and the State of Louisiana is reversed as to the exception of no right of action and that exception is overruled; the judgment on the exception of no cause of action is amended as follows: The exception of no cause of action is maintained, and plaintiffs are ordered to amend their petition to state a cause of action in accordance with the opinion herein within the delay fixed by the trial court under penalty of dismissal as provided in C.C.P. Art. 934;
5. The judgment maintaining the exceptions of Sheldon D. Beychok and Mary Olive Pierson against the State of Louisiana and the Louisiana Stadium and Exposition District is reversed and the exceptions are overruled; the judgment maintaining their exceptions against the City of New Orleans *712 and Ernest N. Morial, its Mayor, is affirmed dismissing their intervention;
6. The judgment denying the request for a preliminary injunction against the New Orleans Basketball Club and annulling the temporary restraining order is affirmed, dismissing the rule nisi for preliminary injunction.
AFFIRMED IN PART, AMENDED IN PART, REVERSED IN PART.
NOTES
[1] "ARTICLE VIII EXISTING CONTRACTS 8.1 HMC takes cognizance that the State has entered into certain service, concessions and other contracts, all as set forth in attached Schedule A, made part hereof by reference. HMC agrees to administer said contracts for and on behalf of the State, and agrees to fulfill the State's obligations under said contracts. Provided, however, that the State shall at all times remain responsible for any payments or expenditures provided for under said contracts, or resulting from said contracts, and the State shall hold harmless and indemnify HMC from any claims arising out of said contracts, except for those caused by HMC's fault, as provided under Article 10.1."

This contract is one of the contracts in Schedule A.