339 So.2d 931 (1976)
Stanley J. GAUDET, Jr., et al.
v.
The BOARD OF COMMISSIONERS FOR the PONTCHARTRAIN LEVEE DISTRICT et al.
No. 7662.
Court of Appeal of Louisiana, Fourth Circuit.
November 16, 1976.
Rehearing Denied December 14, 1976.
Chaffe, McCall, Phillips, Toler & Sarpy, G. Phillip Shuler, III, New Orleans, for plaintiffs-appellants.
Wayne Douglas Mancuso, Metairie, for defendant-appellee Anton Wald.
*932 Daniel E. Beenel, Jr., and Donald J. Cicet, Reserve, for defendant-appellee Board of Commissioners.
Before LEMMON, MORIAL and BEER, JJ.
LEMMON, Judge.
Mr. and Mrs. Stanley Gaudet, the owners of a home adjacent to the Lake Pontchartrain levee, filed this injunction suit and nuisance action, seeking (1) to enjoin Anton Wald, a cattle owner, and the Board of Commissioners for the Pontchartrain Levee District from maintaining and permitting cattle on the levee adjacent to the Gaudets' home; (2) to abate the nuisance caused by the cattle operation, in which cattle frequently came into the subdivision and into the Gaudets' yard; (3) to obtain an order for the removal of a barbed wire fence; and (4) to recover damages.[1] The trial court rendered judgment dismissing the Board on an exception of no right of action and, after a subsequent trial on the merits against Wald only, rendered a second judgment denying the injunction and dismissing the Gaudets' suit entirely.[2] The Gaudets have appealed from both judgments.
Judgment on Exception
The Board's exception was based on the fact, proved by evidence presented at the hearing on the exception, that the Board did not own the property, but had only the right under an expropriated servitude to build and maintain the levee. The exception in effect asserted that the Board was not a proper defendant.
The exception of no right of action is designed to question the right or interest of the plaintiff in instituting the suit. C.C.P. art. 927. These plaintiffs unquestionably had the requisite right and interest to demand injunction of the activities which allegedly caused damage to their property.
We conclude that the Board's exception was improperly maintained, and the judgment must be reversed. Inasmuch as the Board did not take part in the trial on the merits, the judgment on the merits can have no effect on that party.
Judgment on the Merits
The Gaudets testified: In November, 1974 they moved into their home, which was the second residence constructed in the new lakefront subdivision. During construction cattle continually came onto the property and wandered through the subdivision. This nuisance continued after they moved in, and the cattle caused holes in the lawn, ate their shrubs and plants, created problems with files and rats, and interrupted their sleep. On one occasion cattle stampeded near their young children. They complained to the Board and to local law enforcement authorities, who on each occasion required Wald to remove the cattle but accomplished nothing toward preventing continued occurrences. They therefore filed this action on March 19, 1975.
After an earlier hearing was continued, the matter came on for trial on May 14, at which time the Gaudets presented the testimony outlined above. A garden center operator, who had landscaped the premises at a cost of $5,500.00, also confirmed that cattle were loose between the Gaudets' house and the levee, as well as across the street, in late October.
At the next hearing on July 2 the Gaudets presented a police officer who had participated in several investigations of the Gaudets' complaints. About three months earlier the officer had spoken to Wald on two occasions about his cattle being loose and unattended in the vicinity of the Gaudets' subdivision and behind their home.
*933 On a third occasion about a month before trial the officer observed Wald's cattle on the street just east of the subdivision. The officer stated that on each occasion Wald told him someone had left a gate open in a fence across the levee.
For about 15 years prior to the opening of the subdivision, Wald had grazed cattle on the levee in the general area with a certificate of no objection from the Board. At the time of trial Wald's nearest fenced pasture was adjacent to the levee and about a half mile east of the Gaudets' home. Part of the fence surrounding that pasture was located along the base of the levee and separated the pasture from the levee. To prevent cattle from wandering down the levee toward the Gaudets' subdivision when the cattle were released from the pasture to graze on the levee, Wald had erected another fence across the levee, perpendicular to the base.
Wald explained that the Board required a gate in the perpendicular fence and had provided a lock, but that the lock was frequently removed and the gate left open. He attributed the blame for loose cattle on the levee to other persons' leaving the gate open. He stated that he had attempted to alleviate the problem by stringing barbed wire westward along the base of the levee, but that Gaudet had cut the wire immediately.
Commenting on the present status of the problem, Wald testified that the cattle had gotten loose in the vicinity of the Gaudets' home only once in the six weeks between the first and second days of trial and stated that he no longer intended to graze cattle on the levee in the area behind the Gaudets' home. He also presented a governmental health officer who had inspected the area of the Gaudets' home and the adjoining levee five times during that period and had found no loose cattle or unsanitary conditions or public health hazards.
On the other hand, Mrs. Gaudet was recalled at the second day of trial and testified that cattle were loose on the levee behind their property four times during that period, once keeping them awake most of the night.
The trial judge denied the injunction, the record suggesting that he was convinced the situation had improved significantly since the suit was filed. We have concluded, however, that this judgment is improper, since the record established without contradiction that although the situation had improved considerably, Wald's releasing of cattle from the fenced pasture onto the levee was still causing unreasonable interference with the Gaudets' use and enjoyment of their property up to the date of trial.
Without addressing the question as to the proprietary interest Wald acquired in obtaining the Board's permission to graze his cattle on the levee, we observe that Wald could not use the levee in a manner which caused substantial inconvenience to neighbors or which interfered with neighboring owners' use and enjoyment of their property. C.C. arts. 667, 669; Robichaux v. Huppenbauer, 258 La. 139, 245 So.2d 385 (1971). Noting that the problem apparently occurred only when the cattle were released from the fenced pasture onto the levee, we believe the Gaudets are entitled to an order enjoining Wald from releasing his cattle onto the levee without adequate supervision or such other safeguards as are reasonably sufficient to insure that the cattle will not wander along the levee or stray in the vicinity of Woodlake Estates and disturb the Gaudets' use and enjoyment of their property. We do not attempt to specify or limit the manner by which Wald accomplishes compliance with this mandate; reasonable steps, however, must be taken for compliance, under penalty of contempt, whenever Wald releases cattle onto the levee.
We refer the matter back to the trial judge for formulating the terms of the injunction, possibly in consultation with the attorneys, and for issuance of an order consistent with the expressions of this opinion.
For these reasons, the judgment of the trial court, maintaining the exception of no right of action and dismissing the Board of *934 Commissioners for the Pontchartrain Levee District from the suit, is reversed, and it is now ordered that the exception be overruled. The judgment on the merits, dismissing the suit against Anton Wald, is also reversed, and it is ordered that a permanent injunction be issued in terms consistent with the expressions of this opinion. All costs in both courts are assessed against defendant Wald.
REVERSED AND RENDERED.
Before LEMMON, MORIAL and BEER, JJ.
PER CURIAM.
Wald's application for rehearing indicates his understanding that he must simply prevent his cattle from wandering onto plaintiffs' property.
The record indicates that Wald's cattle disturbed plaintiffs' use and enjoyment of their property in many ways and not only by actual entry onto the particular lot. Our judgment contemplates that Wald may release his cattle from the fenced pasture onto the levee only if he employs adequate safeguards to insure that the cattle will remain near the pasture and completely away from Woodlake Estates and that part of the levee adjoining the subdivision.
APPLICATION DENIED.
NOTES
[1] The demand for damages was effectively severed from the trial of the other demands by the trial judge, who declared at the outset of the hearing on the injunction that "(w)e're not going to go into damages today."
[2] Although the trial was a summary hearing on the demand for preliminary injunction, counsel stipulated in this court that the evidence presented and our decision on review would be binding on the demand for permanent injunction.