AYRES, Judge.
Defendants, Culver Bros. Garage, an ordinary partnership, composed of C. B. Cul-ver and L. C. Culver, and the individual partners, have appealed from a judgment in plaintiff’s favor for $900, with interest and attorney’s fees, the principal thereof representing deductions from rental payments by defendants made during the period of August 15, 1950, to October 15, 1951. The defense is that plaintiff refused to make indispensable repairs to leased premises so as to render them fit for the use intended, *71 and, accordingly, deductions were made to offset the cost of electrical repairs totaling $947.
On August 16, 1948, plaintiff, as lessor, and defendants, as lessees, entered into a written contract of lease covering the premises described as 1209-1215 Texas Avenue in the City of Shreveport for a period of five years beginning August 15, 1948, and ending August 15, 1953, “to be used as a garage establishment where trucks and automobiles are repaired and serviced”, on defendants’ promise to pay a rental price of $600 per month for the first two years, $650 per month for the third year, and $700 per month for the fourth and fifth years, payable in advance by the lessees on the 15th day of each month during the term of the lease. This lease contains the stipulation that the lessees agree not to make any alterations or additions to the leased premises without the written consent of the lessor and “agrees during the term of this lease to maintain the building on said premises in good condition and to make all repairs thereto at his own expense that become necessary”. The lease, however, does not contain any clause to the effect that the lessees have inspected the premises and accepted them in the condition found.
The defendants alleged that the lessor failed and neglected to deliver the leased premises to them in such condition as same could be used for the purposes intended by them, and that unknown to them the electrical wiring in said premises had been condemned by the City of Shreveport and that they were unable to use the premises for the purposes for which they were leased; that this information was communicated to the lessor and to her sister, Mrs. Georgie Har-man Chandler, who at the time was the owner of an undivided one-half interest in and to the property, whose interest was later transferred to plaintiff herein, and that upon the refusal and neglect of the said lessor to put said premises in such condition as was contemplated by the parties and suitable for the purpose of operating a garage therein, and in order to minimize the damage, defendants caused said premises to be rewired, repaired and placed in such condition as would pass an inspection by the City of Shreveport and in order to get electricity for said premises to conduct their business as was in the contemplation of the parties at the time the lease was entered into.
That the repairs were indispensable and necessary is established without doubt. The premises had been vacant for several months. Mr. Kent Keeley, chief electric inspector for the city, testified that he made an inspection of the premises in August, 1948, under an ordinance requiring that any place of business being opened up after having been vacant be checked for safety to life and property, and that upon making that inspection he found that the premises did not conform to the ordinance, and he refused a permit for electric service. Following immediately thereafter, an application for repairs to these premises was received from Serwich Electric Company, who had been employed'by the lessor. Serwich made some Repairs but never completed the work. Upon the request of one of lessees and considering that current was needed for the contractors to make tests of their work, a temporary permit of 30 days was granted. ’ Plaintiff took the position that when the “lights were turned on” her obligation had been discharged and refused to make further repairs, and left for Florida on vacation without leaving information with lessees as to her whereabouts. Plaintiff testified, however, that she instructed lessees, in the event anything came up about the lease, to contact Mr. Chandler, her brother in law. After the Inspector notified lessees of his intention to close the premises or subject them to a fine of $50 per day, they proceeded, after inability to contact plaintiff, to cause the repairs to be made, which was done at an expense exceeding $1,000.
That all of this work was necessary and indispensable appears not only from the testimony of Mr. Keeley but from that of Mr. Cooley, the electric contractor who did the work. Mr. Cooley testified:
“ * * * I did the job to hold it to the minimum requirements that it could be held — to do as little work as I could possibly do and use everything there *72 that could be used to meet the requirements that were necessary * * *”.
The operation of a garage and the repairing and servicing of cars, the purposes for which the premises were leased, required the repairs as made, and the mere turning on of the lights was not sufficient and did not constitute sufficient electric service for which the premises were leased.
 Plaintiff contended and the trial court so held that it was the lessees’ obligation to make the aforesaid repairs at their own expense pursuant to the provisions of the lease hereinabove quoted. With this view we are unable to agree. LSA-C.C. Art. 2693 provides, in part:
“The lessor is bound to deliver the thing in good condition, and free from any repairs.”
We have searched in vain for any provision in the lease that relieves lessor from th^ obligation and responsibility. The clause relied upon refers to repairs “that become necessary”, meaning, of course, during the period of the lease. The repairs were of a structural nature and were made necessary by conditions of the premises existing at the time of and antedating the lease. The wiring of the buildings, installed about 1920, was about worn out and in certain portions of the premises completely gone, rendering occupancy hazardous and unsafe, which was the reason that a permanent permit was refused by the Inspector. These defects were, therefore, not such as became necessary during the term of the lease; they already existed when the lease was executed.
The trial court posed the question that if plaintiff was required to make “the necessary repairs” as provided in LSA-C.C. Art. 2694, what repairs were indispensable ? It was then concluded that defendants had not shown which of the repairs were indispensable. The answer to the question is clearly established by the record that all the repairs made were indispensable and necessary for the granting of a permit for electric service to the leased premises and only as fulfilling the minimum requirements therefor and in the absence thereof the leased premises could not have been used for the purposes intended by the parties.
It was further contended that the provisions of LSA-C.C. Art. 2694 had not been complied with and plaintiff placed in default. This article provides:
“If the lessor do not make the necessary repairs in the manner required in the preceding article, the lessee may call on him to make them. If he refuse or neglect to make them, the lessee may himself cause them to be made, and deduct the price from the rent due, on proving that the repairs were indispensable, and that the price which he has paid was just and reasonable.”
The record discloses that plaintiff was informed of the temporary character of the permit and that a permanent permit would not be issued after the repairs made by Ser-wich Electric Company and that she refused to do anything further although C. B. Cul-ver, one of lessees, made request therefor, which she admitted she refused and declined to do before she left on her vacation. Notwithstanding, however, it was only after every effort was made to contact plaintiff that lessees contacted several electric contractors and let the work at the best and lowest price obtainable. Calling upon lessor to make the necessary repairs and her failure and neglect to comply is a sufficient placing in default. Her subsequent persistent refusal to recognize her obligation for such repairs is eloquent proof that an additional demand or a further putting in default would have been a vain and useless thing. It is, therefore, obvious that plaintiff, in the denial of her obligation and in her refusal, put herself in default to such extent and degree that any other demand on the part of the defendants would have been a waste of time and effort. Voss v. Roach, La.App., 35 So.2d 142.
Plaintiff cites Ellis v. Brenner, La.App., 34 So.2d 633, 634, wherein it was stated in an opinion by this court that “defendants resist the suit mainly upon the ground that they were not notified of the necessity to have the new system installed and that, as a condition precedent to their liability for *73 the expense of the new work, they should have had opportunity to have the work done themselves, which opportunity they did not have”, and wherein it was held that a tenant was not entitled to recover for indispensable repairs when he could have contacted one of the two landlords who was available. In the present case, Mrs. Barrow was away vacationing in Florida, left no one who would act for her and with whom, after diligent efforts, defendants were unable to communicate. The lessees could hardly afford to wait, with rent accruing at the rate of $600 per month and their business at a standstill or with no business at all. Mrs. Barrow had previously refused to make any further repairs after having the “lights turned on”. The cited case is, therefore, readily distinguishable from the case now before us.
Lastly, plaintiff contends that a plea of compensation, offset or a reconventional demand must be set forth with certainty as to amounts, dates and items, and where such is not done evidence in support of the claim is inadmissible when timely objection is urged, citing Barnard v. Dealers Finance Co., Inc., La.App., 9 So.2d 263. In a former proceeding, defendant had obtained judgment against plaintiff, a non-resident of the state, and thereunder caused to be made the seizure and sale of certain real estate of hers in Webster Parish, Louisiana. She then instituted the foregoing suit, attacking the proceedings and judgment and the sale of her property held .pursuant thereto as null and void. The defendant filed an answer, coupled with a reconventional demand for the recovery of taxes paid by it on the property involved therein. Defendant simply alleged with respect to the tax item that it should have and recover a personal judgment for “all taxes as have been paid by plaintiff in reconvention to be shown on trial”. Neither the date of the payment nor the amount paid was alleged.
In the present case, both time and amount are definite, which distinguish the present from the cited case. No complaint is made that, by the lack of a more detailed statement of the claim, plaintiff’s rights have been prejudiced or that she was unable to properly defend herself. Moreover, if plaintiff desired more specific and detailed information with reference to the account, she had ample remedy and opportunity under a plea of vagueness or prayer for oyer to obtain such information as she may have desired prior to trial. In a reverse situation such would have been a proper course for a defendant to elicit more specific information, and there appears no reason or basis for applying a different rule here. This is in line with the modern trend in the jurisprudence towards an elimination of technicalities in the promotion of justice.
For the reasons assigned, the judgment appealed is annulled, avoided, reversed and set aside and there is now judgment rejecting plaintiff’s demands and dismissing her suit at her costs in both courts.
Reversed.