389 So.2d 403 (1980)
MECCA REALTY, INC.
v.
NEW ORLEANS HEALTH CORPORATION.
No. 11080.
Court of Appeal of Louisiana, Fourth Circuit.
August 12, 1980.
Rehearing Denied November 6, 1980.
Jerry C. Paradis, Robert R. Rainold, Jr., Baldwin & Haspel, New Orleans, for plaintiff.
Trevor G. Bryan, Jefferson, Bryan & Gray, New Orleans, for defendant.
Before SAMUEL, REDMANN and SARTAIN, JJ.
*404 REDMANN, Judge.
A lessee appeals from a $12,652 judgment for damages from an alleged breach of its lease with plaintiff. The question is whether the lessee was justified in abandoning the premises when the electricity was cut off because of wiring defects. We conclude the abandonment was justified and we therefore reverse.
The lessee experienced a loss of electricity and called an electrician who in turn notified the City inspectors of deficiencies in the electrical service. The deficiencies, as testified to by the electrician, included that the 60-ampere electrical service did not meet the city code requirements for lighting for the 4400 square feet of the building, plus 45 amperes for an electric oven and range and 45 more amperes for central air conditioning (and a Xerox machine and a plastic-card-making machine). (The electrician theorized that the building formerly consisted of two separate but adjacent buildings, each with a 60-ampere meter, and that when those buildings were joined together, one meter was removed.)
The city inspector testified that the electrical service was inadequate for the air conditioning, which had been installed without permit and inspection. In order to solve the problem caused by the air conditioning one "would have had to increase the size of the service conductors coming into the building."
There is no evidence that the lessee had anything to do with the air conditioning of the building or with providing the electrical wiring of the building. The building was defective before the lease.
The lessee did, however, contribute to the further overloading of the already-overloaded circuitry, by using a 30-ampere Xerox machine (the special connection for which already existed), a 15-ampere heater (for a secretary who found the central heat insufficient), and a plastic-card-making machine of unspecified amperage.
Lessor and lessee argued about who should have the necessary electrical work done, but neither did anything, not when the city ordered the work to be started by December 8 and not even when on December 22 the city ordered the electric company to discontinue service before noon of January 8. When the service was disconnected, the lessee found another location suited to its needs and moved out.
It is our judgment that the 60-ampere service's failure to meet the city ordinance requirements independent of the lessee's electrical usage, testified to by both electrician and inspector, was a pre-existing defect, for which the lessor was responsible under La.C.C. 2695. Failure to remedy that defect caused the building to be denied electricity, and therefore constituted a failure by the lessor to "maintain the [leased property] in a condition such as to serve for the use for which it is hired," C.C. 2692(2). As the Civil Code sets apart repairs in arts. 2693 and 2694 from vices and defects in art. 2695, this defect was not a repair made the lessee's obligation by the lease.
Nor did it become part of the lessee's obligation under the lease to "comply. . . with all ordinances and laws," and to "comply with all ... ordinances, ... orders,. . . and requirements" of government agencies "applicable to said premises." These provisions relate to the lessee's own behavior in the leased premises, and do not oblige the lessee, for example, to move the whole building if it be found that it was located on its lot in violation of a zoning ordinance, or to pay the lessor's property tax levied by ordinance against the leased property.
Finally, the lessor argues that the lessee was, in any case, not justified in vacating the premises, because under C.C. 2694, it could have made the repairs and deducted them from the rent. We have earlier noted that arts. 2693 and 2694 govern repairs, and art. 2695 governs defects. Ordinarily the lessee's right to make necessary repairs does not extend to pre-existing defects of the building, Purnell v. Dugue, La.App.Orl.1930, 129 So.2d 178, and therefore the lessee is not obliged either to deduct *405 the cost of remedy from the rent or to sue for dissolution, Freeman v. G. T. S. Corp., La.App. 4 Cir. 1978, 363 So.2d 1247.
Reversed at plaintiff's cost.

ON APPLICATION FOR REHEARING
Plaintiff argues that the electrical service was 100-ampere rather than 60-ampere. The electrician's own earlier bill for 100-ampere fuses is somewhat inconsistent with his repeated testimony that it was 60; so is another electrician's bill to "increase service from 100 amps to 200 amps." Whatever the capacity, the city's letter emphasizes the air conditioning wiring, describing the defects as:
"1. ELECTRICAL WIRING FOR CENTRAL AIR CONDITIONING WAS INSTALLED WITHOUT A PERMIT, AND ALSO OFFICE EQUIPMENT.
"2. Service too small for load capacity.
"3. Fuses on circuit breakers in excess of rated capacity allowed for branch.
"4. The entire installation . . . must be checked and brought up to requirements..." [Emphasis in original.]
Even if the service was 100 amperes, that was inadequate for the lighting of the 4400 square foot building (at 3 watts per square foot for a total of 13,200 apparent wattage, or 120 amperes at 110 volts), 45-ampere oven-range and 45-ampere air conditioning.
Rehearing is refused.