395 So.2d 828 (1981)
HOUMA OIL COMPANY, INC.
v.
Carroll D. McKEY.
No. 13941.
Court of Appeal of Louisiana, First Circuit.
January 26, 1981.
Rehearing Denied March 31, 1981.
*830 Stanwood R. Duval, Jr., Houma, counsel for plaintiff and appellant.
Jerry H. Schwab, Houma, counsel for defendant and appellant.
Before ELLIS, COLE and WATKINS, JJ.
ELLIS, Judge:
On September 10, 1976, plaintiff Houma Oil Company, Inc., entered into a lease with defendant Carroll D. McKey, by virtue of which plaintiff leased a parcel of ground with improvements for use as a retail gasoline station and automobile tire service outlet. At some point after entering into the lease and beginning operation of its business, plaintiff began to experience difficulties with the wiring in the building, and flooding of the premises when it rained. Plaintiff attempted to have defendant make the necessary repairs, but defendant refused on the basis that the lease required that plaintiff make all repairs.
This suit was originally for a declaratory judgment, with plaintiff seeking to have the court declare that it was entitled to withhold rental payments in an amount sufficient to make the necessary repairs to the roof and wiring system, and, alternatively, to permit plaintiff to withdraw from the lease.
Subsequently, plaintiff amended the original petition, alleging that it had been forced to abandon the premises in August, 1978, because of the poor condition of the premises, and asking for a cancellation of the lease and damages. Defendant reconvened for sums he would allegedly have to spend because of damage done to the premises by plaintiff.
The lease entered into by the parties contains the following pertinent provisions:

"IV.
"A. The Lessee will make all necessary repairs, including repairs to the roof and flooring, to keep the leased property in as good order as it now is, ordinary wear and tear excepted, and is also to keep all toilets in repair to conform with good sanitary conditions."

"VIII.
"Lessee may make such additions or alterations to the premises as Lessee may deem necessary; such additions, alterations or improvements so made (except movable trade fixtures or other items which may be removed from the leased premises without permanent damage thereto) must remain the property of Lessor."
The lease is silent as to the condition of the premises at the time of the lease, and there is no provision in the lease which states that the lessee accepts the premises in their present condition.
Articles 2693 and 2694 of the Civil Code provide as follows:
"Art. 2693. The lessor is bound to deliver the thing in good condition, and free from any repairs. He ought to make, during the continuance of the lease, all the repairs which may accidentally become necessary; except those which the tenant is bound to make, as hereafter directed."
"Art. 2694. If the lessor do not make the necessary repairs in the manner required in the preceding article, the lessee may call on him to make them. If he refuse or neglect to make them, the lessee may himself cause them to be made, and deduct the price from the rent due, on proving that the repairs were indispensable, and that the price which he has paid was just and reasonable."
Even when a lease contains a provision, as in this case, that the lessee is liable for all repairs, the landlord is not relieved of his obligation to deliver the premises in good condition, free from repairs. Barrow v. Culver Bros. Garage, 78 So.2d 69 (La. *831 App. 2nd Cir. 1955); Machen v. Gulf Oil Corporation, 184 So.2d 550 (La. App. 2nd Cir. 1966).
Therefore, if the deficiencies complained of by plaintiff existed at the time of the lease, it was defendant's responsibility to make repairs to same.
With respect to the wiring it is clear that the system was antiquated, but that, when installed, it had met the requirements of the time. It is further clear that the wiring was not in compliance with present day building code requirements. The record further reflects that the system was adequate for the needs of the gasoline and tire business which had formerly been conducted at that location by defendant. After plaintiff began to operate its business it changed the gas pump, installed additional equipment and new electric signs, and found the system to be inadequate for the new loads imposed on it. We agree with the trial judge that expansion of the system to meet increased needs is the responsibility of the plaintiff lessee, under Article VIII of the lease.
With respect to the roof, we find that lessor admitted that the roof leaked in two or three places at the time of the lease, although he characterized the leaks as minor. He testified that the flooding of the interior was due to faulty drainage of the entire area during heavy rains. Plaintiff conceded that flooding took place from the streets during heavy rains, but stated that the roof leaks were severe, and prevented work from being carried out when it rained, whether there was flooding from the streets or not. We find the record clearly shows that the roof leaked when the lease was executed, that the leaks were serious defects, and that the defendant had the obligation to repair it. The finding of the trial judge to the contrary was manifestly erroneous and clearly wrong.
We further find that the refusal of the defendant to repair the roof constitutes a breach of the lease between him and plaintiff. When a landlord fails or refuses to make repairs required of him by law, two courses of action are open to the lessee. He may perform the repairs which are the responsibility of the lessor, and deduct the cost thereof from the rent due, under Article 2694 of the Civil Code, but he is not obligated to pursue this course of action. The lessee may also demand the cancellation of the lease, under Article 2729 of the Civil Code. In the latter case, however, he must show that the lessor has failed or refused to comply with his obligations, and that he has been seriously disturbed in his possession as a consequence, or that the premises are no longer suitable for the purpose for which leased. Article 2729, Civil Code; Reed v. Classified Parking System, 232 So.2d 103 (La. App. 2nd Cir. 1970).
In this case, we find that the record preponderated to the effect that plaintiff was sufficiently disturbed in its possession by the leaks in the roof to entitle it to cancellation of the lease.
In its supplemental petition, plaintiff alleged that it had been forced to abandon the premises in August, 1978, because of the refusal of defendant to make the repairs required, and demanded the cancellation of the lease as of the end of July, 1978. The amended petition was filed on January 7, 1980. It further alleged that it continued to pay rent at the rate of $1,000.00 per month from that time, and demands reimbursement of rent paid since the abandonment of the building. Plaintiff also demands lost profits at the rate of $3,000.00 per month. The record shows that plaintiff did move its business out of the building in August, 1978, when it merged with a tire business which was being operated at another location. However, it continued to use a portion of the premises as a warehouse, for storage of some of its stock.
We do not believe that plaintiff is entitled to retroactive cancellation of the lease. He voluntarily continued to pay rent after leaving the premises, and continued to make use thereof, although not as extensively as before. We do find, however, that plaintiff is entitled to cancellation of the lease from the date of judicial demand, *832 January 7, 1980, and to reimbursement for all rent paid from that date.
We find that plaintiff has not proven with legal certainty that it suffered any lost profits by virtue of the breach of the lease by defendant. The profits from the business at that location were shown on a month by month basis. However, it further appeared that the tire business was merged with another, and there is no showing that there was any diminution of profits while the business continued to operate thereafter.
Turning now to the reconventional demand of defendant, we find that defendant was able to prove that there was damage to a canopy, which would cost $687.00 to repair, and broken glass which would cost $649.95 to replace. Plaintiff admits in brief that it is responsible for those amounts.
Defendant also seeks $6,275.00 to repair the wiring in the building. The record shows that the wiring in the building was antiquated, and did not meet present day code requirements, but there was no necessity to perform any repair work to upgrade the system to code requirements so long as electric service was continuously furnished to the premises. However, when plaintiff moved out of the building, it had the service discontinued. Under present regulations, electric service can not be resumed until the wiring is brought up to present day code standards. Defendant claims that since plaintiff discontinued the electric service, plaintiff should pay for repairing the wiring. The trial judge awarded the defendant $6,275.00 for wiring repairs.
We cannot agree. We have found that plaintiff was entitled to cancellation of the lease because of defendant's failure to repair the roof. We further find that it was justified in removing its business from the premises because of the inconvenience of its use due to the leaking roof. We can see no reason why plaintiff should have continued the electric service under those circumstances, or why it should be responsible for the repair to defendant's substandard wiring.
The judgment on the main demand is therefore reversed and set aside, and there will be judgment herein in favor of plaintiff ordering the cancellation of the lease, effective January 7, 1980; and further ordering defendant to refund to plaintiff all rents paid subsequent to January 7, 1980.
The judgment on the reconventional demand is amended so as to reduce the amount thereof to $1,336.95, and as amended it is affirmed.
Defendant shall pay all costs.
REVERSED IN PART, AMENDED IN PART AND RENDERED.