430 So.2d 1243 (1983)
Warren J. MOITY, Sr.
v.
Gus GUILLORY.
No. 82 CA 0738.
Court of Appeal of Louisiana, First Circuit.
April 5, 1983.
Rehearing Denied May 20, 1983.
*1244 Warren J. Moity, Sr., in pro per.
James R. McClelland, Aycock, Horne, Caldwell, Coleman & Duncan, Franklin, for defendant.
Before COVINGTON, LANIER and ALFORD, JJ.
LANIER, Judge.
This is a suit on a written lease contract for residential property seeking a money judgment for unpaid rentals of $1,250 (5 months at $250), $35 in late rental charges, a lease deposit of $150, and an unspecified amount for the cost of restoring the leased premises to "first class condition". The lessee answered alleging fraud in the execution of the lease and filed a reconventional demand seeking the termination of the lease because preexisting defects made the premises uninhabitable. The trial court rendered judgment in favor of the lessee and against the lessor dismissing the lessor's demands at his costs.[1] This devolutive appeal followed.

FACTS
The record does not contain a transcript of testimony taken at the time of the trial, a written narrative of facts agreed to by the parties, or a written narrative of facts by the trial judge, as required by La.C.C.P. arts. 2130 and 2131. The judgment rendered in the trial court indicates that it was based on "the reasons orally assigned...". The alphabetical index indicates that a transcript was "not taken". The trial judge gave written reasons for judgment when he denied the lessor's motion for a new trial. When a record contains written reasons for judgment by a trial judge which reveal substantially all of the material testimony, and the record is sufficiently complete to permit full consideration of the issues presented on appeal, the reasons for judgment will be considered in lieu of the narrative of facts required by La.C.C.P. art. 2131. Paige v. Tregre, 283 So.2d 777 (La.App. 1st Cir.1973), writ not considered 284 So.2d 335 (La.1973); Robinson v. Jackson, 255 So.2d 846 (La.App. 2nd Cir.1971), writ denied 260 La. 700, 257 So.2d 155 (1972).
The pertinent facts are set out in the reasons for judgment as follows:
"The evidence reveals that in December of 1978 the defendant, Gus Guillory, desperately in need for a place to stay in Franklin, LA., entered into a lease with Warren J. Moity, Sr., for the premises at 402 Cypress Street, Franklin, Louisiana. Guillory says that the lease was in blank at the time he signed it and he thought *1245 he was signing a month by month lease. He alleges that the blanks in the lease were later filled out fraudulently by owner Warren J. Moity, Sr.
"The evidence reveals that Moity mailed Guillory a copy of the lease completely filled in within a week or two of January 1,1979, and that Guillory made no protest to Moity at the time. It is obvious that whatever argument Guillory had with the contents of the lease cannot avail him as he acquiesced in the lease by continuing to live on the premises for a period of some six months after receiving the completed and filled in lease. His argument as to fraud in the lease in this respect cannot avail him as he continued to occupy the premises and made no protest of the filled in portion of the lease, so far as the evidence reveals, until suit was filed. "The tenant's argument that the thing leased, that is the house, was not fit for the purpose intended, i.e., human habitation, presents a far more serious question. "To begin with, the lease itself is one of the most favorable to the landlord that the Court has ever seen. It recites that the premises are in first class condition, which the tenant acknowledges, and the tenant agrees to return the premises in the same condition at the end of the lease. The lease further provides that the tenant will be responsible for all repairs, both major and minor. Literally, under this lease, the roof could fall in or the foundation could give way and the tenant would be responsible to restore the roof or the foundation.
"Actually, the premises were in horrible condition at the commencement of this lease on January 1, 1979. The defendant Guillory was desperately in need for a place for himself and his children. He felt like he could patch and fix the place up and place it in such a condition that he could live in it. He tried patching the place up, with the assistance of workmen provided by his landlord, for a period of some six months and finally gave up. Initially, at the beginning of the lease, the residence, in addition to its many other failings, had been vandalized at a time shortly before Guillory's lease began. Human excrement has been randomly thrown on all of the walls of the house. Windows were broken, screens were out, the toilet was broken, the plumbing was not even connected, the heating system in the house did not work, the roof leaked, the hot water heater was located in an outhouse behind the main dwelling and never worked properly. To be noted is that plaintiff Moity himself has tacitly acknowledged that recitals in the lease are not correct. By his contributions to repair he has acknowledged that the place was not in `first class' condition. By plaintiff Moity furnishing workmen to attempt to repair conditions, he has tacitly acknowledged that it is not the obligation of the lessee to do major repairs as required by the recitals in the lease.
"Of course, Guillory knew of some of these conditions before he entered into the lease. He did not know the heating system did not work; nor, that the roof leaked; nor, that the hot water heater did not work. He did not know that the water pipes were broken and had to be connected to the house by a plumber before the water could be turned on.
"The landlord provided workmen. They got a commode from another house next door and installed the same. The landlord also connected the broken plumbing. The landlord provided a workman to work on the hot water heater and the heating system. His workmen however was never able to make the heating system and hot water heater work properly. The roof continued to leak. The tenant, Guillory, bought electric heaters to provide some warmth for his family during the winter and spring of 1979.
"Guillory nailed a piece of plywood over the window frame with the most broken panes.
"In late July 1979, according to the evidence, Guillory decided that he could not face another winter trying to live in a house without a heating system and without a hot water heater to provide hot *1246 water for his family, along with the other deficiencies. Thereupon, he notified his landlord, and moved out early in August of 1979.
. . . . . .
"As the Court sees the matter, the defendant herein knew that the premises were not in good condition at the time he entered into this lease. He was desperate for a place to stay and entered into the lease with the hope that he could make the place tolerable so that he and his family could live in it at least for a time. Despite the recitations in the lease, the landlord also knew, better than the tenant, the condition of the premises. This is shown by the landlord furnishing workmen to attempt to make the place habitable.
"The evidence shows that, unknown to the tenant, the premises had many conditions which the landlord either could not, or, would not, correct. These conditions were: failure of the heating system despite efforts to fix it; and, failure of the hot water heating system despite efforts to fix it. While our climate is moderate most of the year, there are winter months when living here is intolerable without a heating system. The evidence reveals that the tenant was very patient, worked very hard, and did his best to make the place habitable. Both his efforts and the landlord's efforts in this respect were a failure. The Court therefore finds that the tenant was justified in terminating the lease."

TERMINATION OF LEASE
A lessor is bound to deliver the thing leased to the lessee in good condition. La.C.C. art. 2693. The lessor guarantees the lessee against all of the vices and defects of the thing leased which may prevent its being used. La.C.C. art. 2695.[2] Although the lessee assumed the obligation to maintain the leased premises after the lease commenced, such contractual provision did not relieve the lessor of his responsibility for defects in the premises which existed prior to the commencement of the lease. Houma Oil Company, Inc. v. McKey, 395 So.2d 828 (La.App. 1st Cir.1981), writ denied 401 So.2d 356 (La.1981); Mecca Realty, Inc. v. New Orleans Health Corporation, 389 So.2d 403 (La.App. 4th Cir.1980); Machen v. Gulf Oil Corporation, 184 So.2d 550 (La.App. 2nd Cir.1965), application denied 249 La. 378, 186 So.2d 628 (1966). A lessee is entitled to a dissolution of a lease agreement if the property leased is not suitable for its intended purpose. La.C.C. art. 2729; Add Chemical Company v. Gulf-Marine Fabricators, Inc., 345 So.2d 216 (La.App. 3rd Cir.1977), writ denied 347 So.2d 263 (La. 1977).[3] To obtain cancellation of the lease, the lessee bears the burden of proving that the defects rendered the premises unfit for the use intended. Nash v. La Fontaine, 407 So.2d 783 (La.App. 4th Cir.1981).
After reviewing the facts determined in the reasons for judgment and based on the law set forth above, we cannot say that the trial judge was clearly wrong in finding that the lessee was justified in terminating the lease. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). However, the trial judge failed to grant the lessee judgment on the reconventional demand terminating the lease. The trial court judgment will be amended to grant this relief. La.C.C.P. art. 2164; Cox v. W.M. Heroman & Co., Inc., 298 So.2d 848 (La.1974); Primeaux v. Bennett Homes, Inc., 339 So.2d 1251 (La.App. 1st Cir.1976).
*1247 The lessor contends on appeal that by remaining in the leased premises for six months, the lessee acquiesced in the lease and cannot seek termination on the basis that the property was not fit for human habitation. Although a lessee accepts leased premises "as is", he is still entitled to the implied warranty of fitness afforded him by law. Reed v. Classified Parking System, 232 So.2d 103 (La.App. 2nd Cir. 1970), writ denied 255 La. 1097, 234 So.2d 194 (1970), and writ refused 255 La. 1098, 234 So.2d 194 (1970). The reasons for judgment indicate that the lessee and workmen furnished by the lessor attempted to repair the defects in the premises over a period of six months. The lessee left after these efforts failed. This action does not constitute a waiver of the warranty of fitness.
The lessor also contends that the lessee is bound by the stipulation in the written lease agreement that the premises at the time of the execution of the lease were in "first class condition", that he, the lessor, did not consent to a change in the written agreement, and that parol evidence may not be used to alter a written contract, citing La.C.C. arts. 1901,1945 and 2276, and the jurisprudence interpreting them. The trial judge's reasons for judgment indicate that extensive evidence was taken concerning the condition of the premises before and after the execution of the lease. Where the record on appeal contains no transcript or narrative of facts as required by La.C.C.P. arts. 2130 and 2131, there is a presumption that the trial court's judgment is supported by competent evidence.[4]Clark v. Clark, 411 So.2d 548 (La.App. 1st Cir.1982). In such a situation, the facts recited in the trial court's reasons for judgment are presumed to be correct. Aube v. American Insurance Company, 254 So.2d 654 (La.App. 4th Cir.1971), writ denied 260 La. 411, 256 So.2d 292 (1972). Failure to object to evidence in the trial court constitutes a waiver of the right to complain on appeal about the trial judge's consideration of the evidence which is the subject of the objection. Temple v. Liberty Mutual Ins. Co., 330 So.2d 891 (La.1976); Belaire v. Vanderbrook, 405 So.2d 1143 (La.App. 1st Cir.1981), writs denied 407 So.2d 749 (La.1981) and 409 So.2d 659 (La.1982). Since we have no transcript to see if a valid objection was timely entered, the presumption that the trial judge based his opinion on competent legal evidence must prevail. Conques v. Hardy, 337 So.2d 627 (La.App. 3rd Cir.1976).
Because the lessee was lawfully entitled to terminate the lease agreement, he is not liable for the monthly rental payments for the five months remaining on the lease term when he vacated the leased premises.[5] The trial judge's reasons for judgment do not reflect facts sufficient to support the lessor's claims for damages to the leased premises at the termination of the lease or penalty charges for late payments of rent. The lease agreement required the lessee to make an initial deposit of $150 within 15 days after the commencement of the lease. Since the lessee is entitled to termination of the lease, he would be entitled to a return of his deposit. His failure to make the deposit under these circumstances is not actionable by the lessor.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is amended to grant judgment in favor of Gus Guillory and against Warren J. Moity, Sr. terminating the lease agreement between them for the residential premises located at 402 Cypress Street in Franklin, Louisiana, on July 31, 1979. In all other respects, the judgment of the trial court is affirmed. The appellant is to pay all costs of this appeal.
AMENDED AND AFFIRMED.
NOTES
[1] No judgment was rendered in the trial court on the lessee's reconventional demand for termination of the lease.
[2] The duty of the lessor to deliver the thing leased in good condition must be distinguished from the duty of the lessor to maintain the leased thing during the term of the lease. La. C.C. art. 2692; Billeaudeaux v. Soileau, 303 So.2d 810 (La.App. 3rd Cir.1974); Bialy v. Katz, 273 So.2d 360 (La.App. 3rd Cir.1973), writ denied 275 So.2d 870 (La. 1973). In the instant case, the lessee assumed the full responsibility of maintaining the leased premises after the lease commenced, and absolved the lessor for any further responsibility therefor.
[3] The lease agreement, which is filed in the record, does not contain a provision waiving the implied warranty of fitness. See, for example, Louisiana National Leasing Corporation v. ADF Service, Inc., 377 So.2d 92 (La.1979). Rather, the lease agreement stipulates that the leased premises are in "first class condition".
[4] For example, parol evidence is admissible to show a subsequent verbal agreement to repair. Algiers Homestead Ass'n v. Salathe, 188 So. 202 (La.App.Orl.1939).
[5] The lease was for a term of one year commencing December 31, 1978. Brunies v. Police Jury of Parish of Jefferson, 237 La. 227, 110 So.2d 732, 737 (1959).