458 So.2d 1378 (1984)
Lennie Redwine PYLATE, Appellee,
v.
William M. INABNET, Et Al., Appellants.
No. 16528-CA.
Court of Appeal of Louisiana, Second Circuit.
October 31, 1984.
*1382 Hudson, Potts & Bernstein, by James A. Rountree, Monroe, for appellants.
Thompson L. Clarke, St. Joseph, for appellee.
Before PRICE, JASPER E. JONES and NORRIS, JJ.
JASPER E. JONES, Judge.
This is a lawsuit for damages arising from the breach of a lease agreement. The plaintiff is lessor, Lennie Redwine Pylate, and defendants are lessee, William M. Inabnet and Pioneer Investment of Tensas Parish, Inc., the assignee of the lease. The defendants also appeared as plaintiffs in reconvention, contending the lease was breached by Pylate and asking for damages resulting from that breach, for compensation for improvements to the property made by the defendants and for attorney's fees. The defendants appeal a judgment holding them responsible for breaching the lease. The judgment awarded plaintiff eight months unpaid rent, two years unpaid taxes, compensation required to repair damage to the premises, damages for movable property removed from the premises by defendants and attorney's fees. The defendant's demands were rejected. Plaintiff has answered this appeal, requesting her award for rent be increased to reflect her entitlement to twenty months unpaid rental payments. We affirm in part and reverse in part.
On May 22, 1981 plaintiff and Inabnet contracted a lease agreement for a three year term commencing June 1, 1981 covering the property on which the Lake Bruin Motel & Cafe was doing business. The lease stipulates a monthly rental of $1,568.75 and does not state what day of the month the monthly rent is due. The lease requires Inabnet to pay the annual ad valorem taxes on the leased premises and provide liability insurance with limits of $100,000.00 on the leased premises naming the plaintiff as a co-insured.
The lease also stipulates the premises were in good order at the time of delivery, and requires Inabnet to return the property at the termination of the lease in the same condition as received, ordinary wear and tear excepted. Inabnet is required by the lease to make all necessary repairs to the property, and the lease also disclaims plaintiff's responsibility for any damage caused by any vices or defects in the leased property.
The lease provides in the event Inabnet violates any of the above stated conditions, "lessor shall have the right to declare this lease in default and to regain possession of the leased premises without further liability on the part of the lessee." The lease also provides in the event of a breach by the Inabnet, ownership of all movables located on the leased premises used in connection with the business conducted thereon reverts to the plaintiff, and any attorney's fees incurred as the result of a breach is the responsibility of the party cast in judgment.
On May 29, 1981 plaintiff sold Inabnet the good will, stock, merchandise, and fixtures of the Lake Bruin Motel & Cafe. Inabnet assigned his rights under the lease and the sale to Pioneer Investments on June 18, 1981. Pioneer was organized by and is principally owned by Inabnet and for this reason we shall refer to the defendants as appellant or Inabnet.
Inabnet made all rent payments between June and December, 1981, at various times during those months. However, he did not pay the taxes nor acquire the insurance on the property as required by the lease. On January 18, 1982 plaintiff sent Inabnet a letter notifying him the lease "is now null and void and of no effect," citing Inabnet's failure to timely pay the monthly rental and "other obligations" as grounds for rescinding the lease. Shortly after receiving this letter Inabnet attempted to pay the January rent, but his payment checks were returned, with plaintiff claiming the lease was at an end. Plaintiff made no effort to evict Inabnet until July, 1982 when the *1383 property was seized under a writ of sequestration.
In February, 1982 the State Department of Health & Human Resources (DHHR) reopened an investigation of the sewage system servicing the Lake Bruin Motel & Cafe which was begun in 1975 and continued into 1981. DHHR concluded as a result of its investigation the sewage system was defective and water was seeping from the sewer to the ground surface and into Lake Bruin. On May 25, 1982 DHHR ordered Inabnet to replace the defective sewage system with a new one which would cost over $26,000.00. Inabnet refused to comply, citing the tremendous cost of such a replacement and the pendency of this suit which had been filed by plaintiff and DHHR ordered the Lake Bruin Motel & Cafe to cease operation as of July 1, 1982. The writ of sequestration issued on July 30th, and Inabnet voluntarily abandoned the property by returning the keys through his attorney to plaintiff on August 6, 1982. No rental payments were made by Inabnet following the return to him in January of his checks tendered in payment of the January rent.
Plaintiff filed her petition on March 16, 1982, alleging Inabnet's failure to pay property taxes, insurance premiums, rent for December, 1981 and January, 1982, and Inabnet's failure to comply with health regulations as grounds for rescission of the lease. The original petition prayed for reimbursement of the property taxes and insurance premiums paid by the lessor, back rent, and $5,000.00 attorney's fees. This petition was amended to include a demand for $26,959.65 for property damage done to the building on the leased property and for damages for the value of movables removed from the premises belonging to the plaintiff, and the attorney's fee demand was increased to $10,000.00. Inabnet answered denying plaintiff's charges and reconvened for $40,000.00 for reimbursement of defendant's expense incurred making improvements to the property. This reconventional demand was amended by Inabnet demanding $70,000.00 damages for business losses caused by plaintiff's defective maintenance of the sewage system on the leased property. The writ of sequestration was cancelled by joint stipulation of the parties on August 28, 1983.
At the trial Inabnet admitted his failure to pay property taxes and to purchase liability insurance although he contended he had never received notice that these items were due. Inabnet also testified he was unaware of the defective sewage system until such time as DHHR began investigating the system and that he abandoned the leased property in July, 1982 as the result of his business being closed down by DHHR as a result of the defective sewage system which in his opinion was beyond repair. Plaintiff testified Inabnet was aware of the defect in the sewage system at the time he took possession of the leased property and entered the lease agreement despite his knowledge of this fact.
Inabnet admitted removing from the building several items of movable property, some of which were included in the sale from plaintiff to Inabnet and some of which he otherwise purchased. Plaintiff claimed the ownership of all the movable property on the premises used in the business reverted to her upon Inabnet's default on the lease as per the lease agreement. Plaintiff and her corroborating witnesses, mostly former employees of the Lake Bruin Motel & Cafe, all testified that Inabnet damaged the building on the leased property, particularly its ceiling and a water heater, during Inabnet's efforts to make mostly cosmetic improvements to the building. Richard Netterfield, a general contractor engaged by Mrs. Pylate to assess the damage done to the building, testified he had examined the leased property and had determined that it would cost $1,959.65 to repair the damage done to the building.
On the basis of this testimony and the documentary evidence introduced with it the district judge found Inabnet's actions were grounds for dissolution of the lease agreement, citing particularly his failure to timely pay the monthly rentals. Plaintiff *1384 was awarded $9,750.00 representing the value of the removed movables; $12,550.00 representing eight months unpaid rent from December, 1981 to July, 1982; $1,959.65 for the cost of the repair of damages done to the building as per the contractor's estimate; $1,147.89 for 1981 and 1982 taxes; and $11,841.65 in attorney's fees. Inabnet's demands for lost profits and for the refund of sums spent on improvements to the leased property as the result of his claim for breach based on the defective sewage system were rejected for lack of evidence.
Inabnet's appeal and plaintiff's answer to the appeal raise the following issues for the court's consideration:
1) whether the sewage system was in fact defective at the time the lease was contracted, and if so, whether such defect constitutes a breach of a lessor's legal obligation to deliver leased property to her lessee in a condition suitable for the property's intended use;
2) whether this duty to deliver can be disclaimed by the lessor and, if so, under what conditins will this disclaimer preclude an action by the lessee for breach;
3) what remedy the lessee is entitled to if the property leased is not suitable for his intended purpose;
4) whether a lessor is excused from putting his lessee in default when the lessee has passively breached the lease agreement by failing to pay property taxes when due and provide liability insurance as required by the lease by virtue of a lease provision entitling lessor to declare the agreement in default upon lessee's failure to comply with his obligations under the terms of the contract;
5) whether a party's failure to meet his obligations under a contract precludes his bringing a suit for damages against the other party for breach of that same agreement;
6) whether the trial judge's award of damages for movable property removed from the premises and attorney's fees was proper;
7) whether the plaintiff is entitled to back rent from December, 1981 until the issuance of the writ of sequestration and abandonment of the property by the defendant in July, 1982 as determined by the trial judge, or whether as plaintiff claims she is entitled to back rent until August, 1983 when the writ of sequestration was dissolved by joint stipulation of the parties; and
8) whether a lessor is liable to his lessee for improvements made to the premises by the lessee.

DEFECTIVE SEWAGE SYSTEM
Appellant contends the sewage system was defective at the time the lease contract was executed and the plaintiff was aware of this fact at the time the contract was made. Inabnet contends he was unaware of this fact until the beginning of the investigation by DHHR in 1982. Inabnet claims the failure of the sewage system to function properly resulted directly in the closing of the Lake Bruin Motel & Cafe, thus rendering the leased property unfit for its intended purpose and for this reason plaintiff breached her obligation to deliver the leased property to him in a condition suitable for its intended use. Plaintiff argues no such duty exists, and even if such an obligation existed, the lease provisions requiring Inabnet to make all necessary repairs and which stipulates the premises are in good order at delivery eliminate any legal duty imposed on plaintiff as these provisions constitute a representation by Inabnet that he assumes all potential defects of the leased premises. Plaintiff contends the trial judge was correct in her factual determination that no such defect existed at the time the lease was made and in the event a defect did exist Inabnet was aware of any potential defect at the time he entered into the lease contract.
John Hicks, Regional Sanitarian for DHHR, testified at trial on these matters. He stated plaintiff was aware of a sewage problem on the leased property as early as April, 1975, when DHHR informed plaintiff the system would not function because of *1385 soil conditions. Complaints from neighbors of sewage seeping up to ground surface and into Lake Bruin between 1976 and 1979 resulted in several other incidences of notification to plaintiff from DHHR that the sewage system on the property was unsatisfactory. Plaintiff was reinformed of the defective condition in April, 1981 when DHHR determined that the sewage system was failing perculation tests.
Hicks testified DHHR began reexamination of the system on the property in February, 1982 and DHHR sent Inabnet a letter to this effect on February 26th. On March 9, 1982 DHHR sent Inabnet another letter ordering Inabnet to replace the septic tank and field line system in place with an extended aeration package which, according to estimates submitted by McMannus Construction Company, would cost over $26,000.00. Hicks testified DHHR sent another notice to Inabnet on May 25, 1982, threatening closure of the Lake Bruin Motel & Cafe if Inabnet failed to comply with DHHR's previous order. Citing the pendency of this litigation and the cost of the replacement project, Inabnet asked DHHR for a ninety day extension to comply with the order. This request was turned down on July 1, 1982, and on that date DHHR ordered Inabnet to cease operations.
Plaintiff testified she knew the sewer was not working properly and was aware of her five to six year dispute with DHHR over the sewage system prior to her making the lease agreement with Inabnet. Plaintiff admitted she knew the DHHR required a new sewage system on the premises prior to her making the lease with Inabnet and she never informed Inabnet of this fact. She testified she informed Inabnet of a problem with the sewage system, but she also stated that she advised him the problem was minor and all Inabnet needed to do was keep the lines clean and free of obstruction in order to avoid any problem.
The sewage system was defective at the time of the lease agreement and plaintiff was aware of this fact. She failed to notify the lessee of the serious defect.
Contrary to plaintiff's assertion that a lessor does not warrant his property against defects and that his only obligation is to notify his lessee of a potential defect, LSA-C.C. art. 2695 states lessor's warranty obligation to be: "The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in the case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they had arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same."
This warranty can be disclaimed in the lease contract and such a waiver of warranty is not against public policy. Tassin v. Slidell Mini-Storage, Inc., 396 So.2d 1261 (La.1981). However, this case holds that such disclaimer must be in clear, unequivocal language and is of no effect when the lessor knows or should have known of the defect prior to the confection of the lease agreement and has taken no steps to remedy this defect.
A lessee's representation in a lease that he takes the property "as is" does not constitute a waiver of the warranty imposed by Article 2695. Reed v. Classified Parking System, 232 So.2d 103 (La. App. 2d Cir.1970). A lease provision requiring the lessee to make all necessary repairs is not a valid disclaimer of lessor's warranty obligation. Houma Oil Co., Inc. v. McKey, 395 So.2d 828 (La.App. 1st Cir. 1981); Moity v. Guillory, 430 So.2d 1243 (La.App. 1st Cir.1983). A clause stating lessee accepts the property in "first class condition" and ending with the lessee's promise to return the property in that first class condition is not a valid waiver of lessor's warranty obligation. Moity v. Guillory, supra.
In Moity a lessor alleged the lessee breached the lease by moving out and sought unpaid rent, late rental charges, lease deposit, and the cost of restoring the leased premises. The lessee reconvened, *1386 asking for termination of the lease on the grounds the property was unfit for its intended use. The property leased was a residence which was in horrendous condition at the time the lease was executed; the premises had no plumbing, no heat, no hot water, several windows were broken and the roof leaked. The residence was not fit for its intended purpose which was human habitation. Despite his knowledge of some of these conditions defendant signed the lease agreement, partially because he was desperately in need of a place to live and partially because he believed he could fix the place up with reasonable effort. The defendant abandoned the leased premises after failing in a six month effort to repair the defects. At a trial on this matter Moity, the defendant in reconvention, availed himself of most of the defenses asserted by the lessor in the instant casethat the lease agreement provides a waiver of the fitness warranty; that the lessee acquiesced in the lease by continuing to live on the premises for six months after being made aware of the defective condition; and that lessee, by failing to notify the lessor of the defects thereby lost his right to bring suit against the lessor for these defects. The trial court rejected all these contentions, denied the plaintiff's claims against his lessee, and awarded defendant termination of the lease and a refund of his rent deposit. This judgment was essentially affirmed on appeal.
A lessee has the right to abandon the leased premises without having to pay rent for the unexpired term of the lease and is immediately entitled to sue for cancellation and/or for damages when either the lessor already knows about the defect and refuses to do anything about it or when the defect is so severe that it renders the property totally unfit for its intended use. Freeman v. G. T. S. Corp., 363 So.2d 1247 (La.App. 4th Cir.1978); Mecca Realty v. New Orleans Health Corp., 389 So.2d 403 (La.App. 4th Cir.1980). See also Brignac v. Boisdore, 272 So.2d 463 (La.App. 4th Cir.1973); affirmed, 288 So.2d 31 (La.1973).
Plaintiff had an obligation to deliver the leased property to Inabnet free of the serious plumbing defect and her failure to do so constitutes a breach of her obligation implicit in the lease agreement by virtue of LSA-C.C. art. 2695. Nothing in the lease agreement constitutes a disclaimer or a waiver of this obligation. Even if the provisions of the lease could be construed to contain such a waiver it would have had no legal effect because plaintiff had knowledge of the defective sewer system at the time the lease was executed and failed to correct the defect LSA-R.S. 9:3221,[1]Tassin v. Slidell, supra. The serious sewage defect rendered the leased property totally unfit for its intended business purpose, and not only did plaintiff, who was aware of this defect long before the lease was entered into, do nothing to remedy the situation, she failed to notify her lessee of the serious problem. These circumstances relieve Inabnet of any obligation he had to notify his lessor of the problem and ask her to repair the defect. The seriously defective condition of the sewage system also constitutes "a serious disturbance of possession" which entitled the lessee to dissolution of the lease.

INABNET'S FAILURE TO PAY PROPERTY TAXES AND SECURE LIABILITY INSURANCE
Plaintiff breached the lease agreement by violating the warranty of fitness implicit in this lease agreement. Inabnet violated the terms of the lease by failing to pay property taxes and provide liability insurance on the leased premiums as required by the expressed provisions of the contract. Inabnet testified he did not know when *1387 these items were due; however, he admitted he was aware that the lease required him to pay the taxes and provide the insurance and he admitted his failure to do so. Counsel for appellant asserts repeatedly in brief that Inabnet's breach of the contract is not an issue in dispute. At issue, according to the appellant, is whether Inabnet's failure to comply with these requirements is actionable as a passive breach of contract without the lessor having put the lessee in default.
LSA-C.C. art. 1911 specifies that a party who breaches a contract can be put in default "by the terms of the contract, when it specially provides that the party, failing to comply, shall be deemed tp be in default by the mere act of his failure."
The instant lease provides: "Should lessee at any time violate any of the conditions of this lease, or fail to comply with any of lessee's obligations hereunder, or fail to pay the rent, water bill or similar charges punctually, at maturity, as stipulated... lessor shall have the right to declare this lease in default and to regain possession of the leased premises without further liability on the part of the lessee."
In Investor Inns, Inc. v. Wallace, 408 So.2d 978 (La.App. 2d Cir.1981) this court construed the following paragraph in a lease agreement:
"If lessee should default in payment of any two consecutive installments of rent, lessor may at its option declare all remaining installments of rent due and eligible and bring suit to enforce collection thereof or may demand a cancellation of his lease and of all rights and obligations of the parties hereunder."
The court held this provision provided for a contractual placing in default when the lessee missed two rental installments. Under these circumstances this court held that under the provisions of LSA-C.C. art. 1911(1) no formal placing in default was required as a prerequisite to filing an eviction proceeding.
The contractual default provision in the Wallace case and the quoted provision of the Pylate-Inabnet lease are conceptually identical. "Regaining possession of leased premises" is essentially the same thing as "cancellation of this lease." Moreover, the payment of taxes and providing the insurance, which were conditions of this lease, was declared by the express terms of the contract to be a part of the rent. The taxes were due January 1st and were past due at the time of the January 18th demand letter written by Pylate to Inabnet. Inabnet's duty to provide the liability insurance had been in existence since the day the lease was executed. In the case of Bray v. Arthur Treacher's Fish & Chips, 409 So.2d 1274 (La.App. 2d Cir.1982) this court found the failure of a lessee to provide insurance required by the lease entitled the lessor to cancel the lease. Inabnet was in contractual default for failure to pay these taxes and for failure to buy liability insurance naming the lessor a co-insurer as required by the lease.
We conclude Inabnet had breached the lease in these respects and no prior placing in default was required for the plaintiff to demand termination of the lease.

MUTUAL BREACH
Plaintiff and Inabnet are each at fault in causing the termination of the lease agreement. Each were in default. Neither are entitled to specific performance of the agreement. Pratt v. McCoy, 128 La. 570, 54 So. 1012 (1911); Seeger v. Seeger, 169 La.611, 125 So. 732 (1929); Danziger v. Tessitore, 13 La.App. 450, 126 So. 700 (Orleans 1930); Williams Lumber Co. v. Stewart Gast & Bro., 21 So.2d 773 (La. App. Orleans 1945); Pennington v. Drews, 218 La.258, 49 So.2d 5 (1950). Penalty damages which are synonymous with liquidated damages which are agreed upon in the contract and which are designed to enforce the principal obligation cannot be collected where there exist a legal excuse for the nonperformance of the principal obligation. Godchaux v. Hyde, 126 La. 187, 52 So. 269 (1910); Danziger v. Tessitore, supra; Pennington v. Drews, supra; *1388 Associates Commercial Corp. v. Bayou Management, 426 So.2d 672 (La.App. 1st Cir.1982); Moity v. Guillory, supra.
An agreement to pay attorney fees upon breach of a contract is an agreement to pay liquidated damages. Guaranty Bank & Trust Co. v. Quad Drilling Corp., 284 So.2d 351 (La.App. 1st Cir.1973).
The agreement in the lease by Inabnet to forfeit to the plaintiff all movable property belonging to him on the leased premises and used in the motel, lounge and restaurant business in the event he defaulted is also a provision for liquidated damages in the event of breach. Because of plaintiff's breach of the primary obligation under the contract she was not entitled to the award of the penalty damages for the value of Inabnet's movable property which he removed from the leased premises nor was she entitled to the attorney fee award.
Inabnet's breach of the lease deprives him of any right to seek attorney's fees from Pylate.
Though plaintiff's breach of the lease deprives her of the right to collect penalty damages, she retains the right to enforce the collection of compensatory damages. In Williams Lumber Co. v. Stewart Gast & Bro., supra, plaintiff, who had breached a contract to deliver a large quantity of lumber, was found entitled to receive the price for lumber actually delivered. In Moity v. Guillory, supra, a lessor, who had breached the warranty of fitness and was denied specific performance of the lease and a rent deposit designed as a penalty to enforce this obligation, was found entitled to the rent for the period the lessee actually occupied the premises. In Freeman v. G. T. S. Corp., supra, a lessor, who breached the warranty of fitness and was denied the right to enforce the lease and collect the rent for the unexpired term, was found entitled to the rent during the period the lessee actually occupied the leased premises. In the case of Associates Commercial Corp. v. Bayou Management, supra, a lessor who breached a lease by refusing unreasonably to consent to a sublease, was denied early termination penalty provided for in the lease but was found entitled to the rent following the breach for the period of time the premises was occupied by the lessee.
The district judge's award for rent covers the period from December 1, 1981 through July, 1982 at the rate of $1,568.75 per month for a total sum of $12,550.00. Plaintiff claims the proper compensation for rent should include all rent payments unpaid until August, 1983 when the property was returned to Pylate's possession by joint stipulation of the parties. Plaintiff cites Inabnet's refusal to return the leased property when put in default and the closing of the Lake Bruin Motel & Cafe as a result of Inabnet's action depriving Pylate of the use and benefit of the leased property until August, 1983 as grounds for the increased award.
A lessee's liability for rental payments ceases upon his eviction from the leased premises by virture of a writ of sequestration obtained on the leased property. Pirkle & Williams v. Shreveport Jitney Jungle, 140 So. 837 (La.App. 2d Cir.1932).
Plaintiff's contention is therefore without merit because she evicted Inabnet on July 30, 1982 by seizing the leased premises.
The record established that Inabnet occupied the premises through July and that he had not paid the rent for the last seven months. Contrary to the trial judge's finding the evidence establishes he paid December's rent. Plaintiff is entitled to the unpaid rent while Inabnet occupied the premises which is the sum of $10,981.25.
Plaintiff's claim of $1,965.00 for actual damages which Inabnet did to the leased premises was supported by the record. The need for the repair of these damages and the cost of the repairs were established by the testimony of Richard Netterville, a contractor, and by documents and pictures offered in connection with his *1389 testimony. We find no manifest error in this trial court determination and plaintiff is entitled to the sum of $1,969.00 as compensatory damages as the cost to repair the leased premises.

IMPROVEMENTS
Inabnet testified at trial he spent over $47,000.00 improving the leased property and submitted extensive documentation of this fact as an offer of proof. The sum of the Inabnet's testimony is that most of these improvements consisted of the following: placing of awnings over the windows on the building, complete renovation of the bar inside the lounge, removing air-conditioning ducts inside the building and placing them on the roof, placing new carpeting and a new hardwood floor in the lounge, putting wallpaper on the walls, installing a new ceiling, and installing new lighting and a chandelier in the lounge. While Inabnet stated he spent some money to replace broken windows, to fix the plumbing in a bathroom, to fix a few air-conditioning units in the motel, and to fix a stove in the restaurant, by his own admission most of the work done by Inabnet was for cosmetic purposes. Inabnet admitted the building and the fixtures were usable at the time he took possession of the premises and his primary purpose for making the extensive changes to the building was to make the building, particularly the lounge, look like "The Back Seat," a lounge in Monroe. A review of the documentary evidence contained in the offer of proof supports a conclusion that over 90% of the expenditures made by Inabnet were for these cosmetic improvements.
Freda Womack, former manager of the Lake Bruin Motel, testified the facility was entirely usable and in good working condition and that none of the improvements were required to place the leased property in a usable posture. We note this facility was constructed in 1975 and there should have been no extensive deterioration in the few years that elapsed between the time it was built and the date of the lease. Mrs. Womack also testified, as did several other former employees of the Lake Bruin Motel & Cafe, that although plaintiff was continually aware of Inabnet's efforts to remodel the property, she was opposed to his actions throughout and she repeatedly voiced her opposition to Inabnet's actions. Inabnet denied plaintiff opposed his work to improve the leased premises. Plaintiff made no effort to stop the work. We conclude she consented to the improvements.
A lessee is entitled to make improvements and repairs which are necessary to place the property in a condition to be used for its intended purpose, and the lessee is entitled to compensation for such works. LSA-C.C. art. 2694; Walters v. Coen, 223 La.912, 67 So.2d 175 (1953). If Inabnet had spent $26,000.00 replacing the defective sewer system this would have been an expense which he would have been entitled to recover under this rule from the plaintiff. However, this rule is inapplicable to the case at hand since the evidence establishes most of the improvements here must be considered cosmetic rather than necessary. Some of the funds expended by Inabnet were for normal maintenance which he was obligated to perform by the terms of the lease.
Ownership of and reimbursement for nonessential improvements made by the lessee to leased property is governed by LSA-C.C. art. 2726: "The right of the lessee to remove improvements and additions he has made to the thing let is governed by LSA-C.C. art. 493." Article 493 provides in turn:
"Buildings, other constructions permanently attached to the ground and plantings made on the land of another with his consent belong to him who made them. They belong to the owner of the ground when they are made without his consent.
Things incorporated in, or attached to an immovable so as to become its component parts ... belong to the owner of the immovable.
One who has lost the ownership of a thing to the owner of an immovable may have a claim against him or against a *1390 third person in accordance with the following provisions."
These "following provisions" include LSA-C.C. art. 495,[2] which outlines the remedy available to someone who incorporates or attaches to an immovable things that become its component part.
The rules contained in LSA-C.C. art. 495 were formerly contained in LSA-C.C. art. 2726.[3] In the case of Abbeville Lbr. Co. v. Richard, 350 So.2d 1292 (La. App. 3d Cir.1977) the court held that former LSA-C.C. art. 2726 gave the lessee in a lease contract which required him to return the leased premises to the lessor in the same condition received by him, the right to remove the improvements provided he left the premises in the state it was in when he received it. If the improvements were made with lime and cement under former LSA-C.C. art. 2726 the lessor could elect to retain them upon paying a fair price. The present LSA-C.C. arts. 493 and 495 have changed the wording of being attached with lime and cement to becoming a component part of the immovable but the concept remains the same. The right of a tenant to claim reimbursement from the lessor in an appropriate case is not terminated by virtue of a breach of the lease or by his abandonment of the leased premises. Leake v. Hardie, 245 So.2d 729 (La.App. 4th Cir.1971); Walters v. Coen, supra.
In Riggs v. Lawton, 231 La.1019, 93 So.2d 543 (1957), the court held a lessee cannot force a lessor to compensate the lessee for improvements left on the property where there is no attempt to remove such improvements. In Taylor Lumber Company, Inc. v. Fuller, 292 So.2d 878 (La.App. 1st Cir.1974), the lessee left a slab of concrete placed by him on the leased premises upon the termination of the lease which the lessor thereafter used in connection with his sawmill business. The lessee contended the use of the slab by the lessor constituted an election to retain it under former LSA-C.C. art. 2726 (a concept now in LSA-C.C. art. 495) which required the lessor to pay for the improvements. The court rejected this contention and stated:
"The jurisprudence clearly indicates that a lessee who makes improvements to leased premises with lime and cement, does so at his own risk knowing that he cannot compel lessor to pay the value of such improvements which lessor may elect not to retain. Consequently, if a lessee leaves such improvements in a position and condition so that the lessor may not resume lessor's prior operations without using the improvements, the mere resumption of business with such use does not per se constitute an appropriation an use tantamount to an election to retain. Under the circumstance, we find that lessor made his election in a response to lessee's reconventional demand wherein lessor opted that lessee remove the slab."
Inabnet had a right to remove improvements placed on the leased premises provided he left the premises in the condition in which he received it. He did not move the improvements which had for the most part become a component part of the leased premises. Plaintiff could have elected to retain them and pay for them in *1391 the manner provided for in LSA-C.C. art. 495. There is no evidence plaintiff made an election to retain the improvements. Plaintiff's use of her property which necessarily results in the use of improvements placed upon the premises by Inabnet and not removed by him does not constitute an election by her to retain the improvements within the contemplation of LSA-C.C. art. 495 and her use of the improvements under these circumstances does not make her liable to pay for them. Taylor Lumber Co. v. Fuller, supra. Inabnet's conduct of making improvements to the leased premises and abandoning them upon the termination of the lease does not result in plaintiff being required to pay for them. Riggs v. Lawton, supra.
Inabnet defaulted in the performance of his obligations under the lease. He acquiesced in his constructive eviction by virtue of the defective sewer without making demand upon plaintiff to correct the defect. He abandoned the leased premises without making any effort to remove any improvements from the leased premises. He has not established that he sought plaintiff's permission to remove any improvements which could have been removed without damage to the premises and been denied the right to remove them. He has not established that plaintiff elected to retain the improvements and pay for them. All of these circumstances establish that Inabnet had not proved he is entitled to any indemnity from plaintiff for the expenses he incurred in making improvements to the leased premises.

CONCLUSION
For the reasons assigned we have concluded that plaintiff is entitled to the rent for the seven month period that Inabnet occupied the premises from January, 1982 through July, 1982, which he has not paid, at the monthly rate of $1,568.75, which results in the total unpaid rent being $10,981.25.
Plaintiff is also entitled to the prorated ad valorem taxes for the portion of 1981 and 1982 that are designated as rent by the lease, the amount of which is $1,147.89. Plaintiff is also entitled to the sum of $1,959.65 which it will cost to repair the damages done to the leased premises by Inabnet.
Plaintiff is entitled to no award for the value of Inabnet's movables which he removed from the leased premises nor is she entitled to an attorney fee award.
All Inabnet's claims for damages were rejected by the trial court and on appeal he only sought cost of improvements made to the leased premises and attorney fees and he is entitled to neither.
We REVERSE AND SET ASIDE the judgment of the trial court dated February 3, 1984 and the amended judgment dated February 8, 1984 and recast the judgment to read as follows:
"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the lease between Lennie Redwine Pylate and William M. Inabnet dated May 22, 1981, including the option to purchase therein contained, which was assigned to Pioneer Investments of Tensas Parish, Inc., is declared canceled and of no further legal effect.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Lennie Redwine Pylate and against William M. Inabnet and Pioneer Investments of Tensas Parish, Inc., in the amount of $14,088.79, together with legal interest from date of judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all demands of William M. Inabnet and Pioneer Investments of Tensas Parish, Inc., are rejected.
All costs of these proceedings are assessed equally between plaintiff and defendants."
NOTES
[1] LSA-R.S. 9:3221. Assumption of responsibility by lessee; liability of owner

The owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable for injury caused by any defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time.
[2] LSA-C.C. art. 495. Things Incorporated in, or attached to, an immovable with the consent of the owner of the immovable

One who incorporates in, or attaches to, the immovable of another, with his consent, things that become component parts of the immovable... may, in the absence of other provisions of law or juridical acts, remove them subject to his obligation of restoring the property to its former condition. If he does not remove them after demand, the owner of the immovable may have them removed at the expense of the person who made them or elect to keep them and pay, at his option, the current value of the materials and of the workmanship or the enhanced value of the immovable.
[3] Former LSA-C.C. art. 2726. Improvements and additions made by lessee, removal or compensation

The lessee has a right to remove the improvements and additions which he has made to the thing let, provided he leaves it in the state in which he received it.
But if these additions be made with lime and cement, the lessor may retain them, on paying a fair price.